[No. A041437. First Dist., Div. Four. Sept. 27, 1989.]

In re the Marriage of ELAINE and DAVID G. WATT.
DAVID G. WATT, Appellant, v.
ELAINE WATT, Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV.

COUNSEL

Jack B. Burstein and Smith & Burstein for Appellant Husband.

William H. McPherson and McPherson, Barnett & Mattice for Appellant Wife.

OPINION

ANDERSON, P. J.—In this dissolution of a career-threshold marriage, we hold that the trial court must consider the totality of one spouse's contributions to the other's attainment of an education, including contributions for living expenses, when making a spousal support award decision pursuant to Civil Code[1] section 4801. We further determine that in applying the spousal support criterion in effect at the time of trial, the court improperly focussed exclusively on the actual marital standard of living, without taking into account the reasons for the low standard. Finally, we hold that reimbursable community expenditures for the student spouse's education under section 4800.3 generally do not include ordinary living expenses.

In this marital dissolution action Elaine Watt appeals from the judgment on reserved issues denying her requests for spousal support and reimbursement to the community of funds spent on David Watt's education. David cross-appeals from that portion of the judgment ordering him to pay Elaine's attorney fees and costs. We affirm in part and reverse in part.

I. BACKGROUND

The parties married on June 17, 1972, and separated nine and one-half years later on December 15, 1981. In 1974 they moved to Hawaii so David could continue his studies there. The couple had no children.

David was a full-time student for the entire nine and one-half years of the marriage, advancing from an undergraduate program to postgraduate studies and finally medical school; he received his medical degree five months after separation. Elaine worked full-time during the marriage, using all of her income for family expenses.

For the years 1975 through 1981 (exclusive of 1977, for which we have no information), the parties' combined gross income was $81,779.92, of

---

[1] Unless otherwise indicated, all further statutory references are to the Civil Code.

which Elaine contributed $66,923.92 in earnings and David contributed $14,856. David's student loans for the same period totalled $26,642. David used at least $3,000 in loan funds for direct educational expenses (tuition, books, fees), leaving approximately $23,642 for the couple's living expenses.

For the past 17 years Elaine has worked for Kaiser Foundation Hospital (Kaiser), first as a pharmacy clerk and, since 1979, as a pharmacy technician. Following separation, Elaine held two part-time jobs, working sometimes sixty hours per week to meet monthly living expenses. In 1986 she assumed a full-time position at Kaiser.

Elaine became interested in nutrition and culinary arts and started taking cooking classes in 1981. She testified that during their marriage, she talked with David about the possibility of attending school after he finished his education and stated, "that's when I decided I would like to go into culinary arts." Shortly after the couple separated, Elaine borrowed $500 from David's mother to pursue a junior college education in the field of nutrition. After two semesters she abandoned that effort because she could not "make it" working part time or being on call, and had to take another job. She later repaid the loan.

At trial Elaine explained she would like to enroll in the 16-month program at the California Culinary Academy in San Francisco. Her aspiration is to start her own catering business.

David now is an anesthesiologist with the Permanente Medical Group. In 1987 his annual salary was approximately $94,000. With overtime, his actual income has been much higher.[2]

The parties' marital status was terminated June 18, 1985, with the court retaining jurisdiction over all other matters. The central issues at trial were Elaine's requests for (1) spousal support for her further education and training and also because of need, and (2) reimbursement for community funds spent on David's education. The court ordered David to pay $7,500 in attorney fees on Elaine's behalf, but did not grant her any other relief. Elaine appeals from the judgment and David cross-appeals solely on the issue of fees.

## II. The Trial Court Decision

The trial court issued a detailed statement of decision which included the following findings pertinent to this appeal: (1) the extent to which Elaine

---

[2] Additional pay for the first six months of 1987 totalled $12,114.13.

contributed to David's attainment of an education, training, career position or license "was minimal to the point of 'de minimis non curat lex' "; (2) Elaine evidenced no need for spousal support, retraining or education to obtain more marketable skills/employment; and (3) the couple's standard of living during the marriage did not exceed Elaine's present standard of living.

The court also found that Elaine's gross income was higher than the income she indicated was "achievable" as a chef and concluded, "a need to change [jobs] has not been shown. . . . [Elaine is] self supporting, beyond the standard of living attained by the parties while married, and in no need of support . . . ."

On the matter of reimbursement for the expenses of David's education, the court determined there were no community contributions which should be reimbursed. Finally, the court ordered David to assume full responsibility for repayment of all student loans (nothing had been repaid during the marriage).

### III. Elaine's Appeal

On appeal Elaine contends the trial court abused its discretion in denying spousal support and erred in ruling that the community made no reimbursable contributions to David's education.

Elaine's arguments concern interpretation of amendments to the Family Law Act[3] which the Legislature enacted in 1984 to provide for (1) reimbursement of the community's contributions for the education or training of a spouse under specified circumstances and (2) consideration of the nonstudent spouse's contributions to the attainment of that education or training when awarding spousal support. Specifically, the amendments added section 4800.3, subdivision (b)(1), which mandates that absent a written agreement to the contrary, and subject to certain limitations, "[t]he community shall be reimbursed for community contributions to education or training of a party that substantially enhances the earning capacity of the party." The statute defines compensable community contributions as "payments made with community property for education or training or repayment of a loan incurred for education or training." (§ 4800.3, subd. (a).) Additionally, the amendments also amended section 4801, subdivision (a)(1)(C), to require the court to consider, when making a spousal support determination, "The extent to which the supported spouse contributed to the attainment of an education, training, a career position, or a license by the other spouse."

---

[3] Section 4000 et seq.

## A. *Spousal Support*

■ The Family Law Act vests broad discretion in the trial court to decide the propriety of a spousal support award. (*In re Marriage of Wilson* (1988) 201 Cal.App.3d 913, 916 [247 Cal.Rptr. 522].) A reviewing court will not disturb this exercise of discretion unless "it can fairly be said that no judge would reasonably make the same order under the same circumstances." (*In re Marriage of Sinks* (1988) 204 Cal.App.3d 586, 591 [251 Cal.Rptr. 379].)

Section 4801[4] establishes the criteria a court must follow in fashioning an appropriate support order. The court must not simply recognize these criteria, it must also apply them in arriving at its decision. (*In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 425 [190 Cal.Rptr. 885].)

Elaine asserts we must reverse the judgment because the trial court based its decision on incorrect legal or factual conclusions about (1) her potential income as a chef; (2) her economic needs; (3) the contributions she made to David's career and (4) the couple's lifestyle. We discuss each of these concerns and conclude that the lower court did err in applying the third and fourth concerns.

### (1) *Retraining*

■ In considering the specific criteria set forth in section 4801, subdivision (a)(1)(A), the court concluded Elaine had no need for retraining or

---

[4] At the time of these proceedings, the relevant portions of section 4801 read as follows: (a) In any judgment decreeing the dissolution of a marriage . . . of the parties, the court may order a party to pay for the support of the other party any amount, and for any period of time, as the court may deem just and reasonable. In making the award, the court shall consider all of the following circumstances of the respective parties: [¶] (1) *The earning capacity of each spouse, taking into account the following*: [¶] (A) The marketable skills of the supported spouse; the job market for those skills; the time and expenses required for the supported spouse to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment. [¶] (B) The extent to which the supported spouse's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported spouse to devote time to domestic duties. [¶] (C) *The extent to which the supported spouse contributed to the attainment of an education, training, a career position, or a license by the other spouse*. [¶] (2) The needs of each party. [¶] (3) The obligations and assets, including the separate property, of each. [¶] (4) The duration of the marriage. [¶] (5) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse. [¶] (6) The age or health of the parties. [¶] (7) The standard of living of the parties. [¶] (8) Any other factors which it deems just and equitable." (Italics added.)

In 1988 the Legislature amended subdivision (a), making substantive as well as numbering changes. Subdivision (a)(1)(C) is now subdivision (a)(2), and will be referred to as such hereafter.

education to acquire more marketable skills. In connection with this conclusion the court found that her then-current income was higher than would be "achievable" as a chef. Elaine claims the evidence does not support this finding, and, in turn, the court erroneously determined she did not need retraining.

The evidence shows Elaine's gross annual income to be $26,156.00. The brochure for the California Culinary Academy indicates graduates report an average annual starting salary of $25,000. A newspaper article included in the record states that graduates attaining top executive chef status earn at least $50,000 annually plus a percentage of the business. From the record it is apparent that starting out, Elaine in fact would be no better off economically for completing the program than she is now, although her earning potential might be higher.

Elaine also argues that the court's finding is misleading because the $26,156 is pay for a 60-hour, not a 40-hour week. True, Elaine testified she worked 60 hours a week "on and off" for the last 5 years. She also testified that in 1985 or 1986 she took a full-time job at Kaiser. We do not know when she quit her second job, or how much of the $26,156 would be related to working in excess of a 40-hour week. Further, we do not know how many hours a chef works.

We think the reasonable inference from the facts presented is that the career change anticipated by Elaine would not immediately or necessarily result in a material increase in income and, thus, Elaine did not demonstrate a present need for retraining or education to attain more marketable skills. Substantial evidence supports this conclusion.

### (2) Needs

Elaine next urges that the court should have awarded spousal support based on need. The trial court found her monthly net income to be between $1,400 and $1,600, with monthly expenses running approximately $1,400. Under these facts, Elaine was earning just enough to get by.

Elaine disputes the monthly expense finding. Her income and expense declaration filed July 22, 1987, listed monthly expenses of $2,409, as contrasted with $1,359 as of December 17, 1986. During cross-examination, it became apparent that certain items such as rent, transportation and incidentals, although substantially higher on the second statement, either had not changed at all, or had not changed as much. Further, the balance listed for several loans remained the same on the July statement, when in fact they were lower because of payments made during the intervening seven months.

And of the $1,686.47 balance showing for "Attorneys-Hawaii," most was owed by David, not Elaine.

It appears the trial court in weighing the evidence and, in particular, the discrepancies brought out during cross-examination, chose to accept the earlier financial statement as more accurately reflecting Elaine's true monthly expenses. This is within the province of the trial court, and we conclude that its finding concerning Elaine's monthly expenses is supported by substantial evidence. Thus the court did not abuse its discretion in failing to award spousal support based on need.

### (3) *Contributions*

Elaine additionally argues that the trial court erroneously found she had made a "de minimis" contribution to David's attainment of an education and career position. The evidence shows that all of David's direct, out-of-pocket educational expenses, such as tuition, books and lab fees, were paid for with proceeds from student loans and grants. However, Elaine shouldered approximately 64 percent of the community's living expenses for the period 1975-1981.[5] In dollar terms, she paid $28,426 more than David did—an amount which is not so minimal that the law does not accord it notice.

The court's conclusion is either factually wrong and, therefore, not supported by the evidence, or is based on an interpretation of section 4801 that does not take living expenses into account when examining the extent to which the nonstudent spouse "contributed to the attainment of" the student spouse's education and career.

We begin our analysis by pointing out that the operative section 4801 language is ambiguous because the concept of "contributing to the attainment" of an education is open-ended and nowhere defined in the statutory scheme. As such, the language is subject to conflicting interpretations.

Thus, some discussion of the legislative history of section 4801, subdivision (a)(2), is appropriate here. In November 1983, the Assembly Committee on Judiciary held a public hearing on legislative proposals to resolve community property/career asset issues presented in the high profile case of *In re Marriage of Sullivan*,[6] then pending before the Supreme Court. In that case, Janet Sullivan argued that her husband obtained his medical education

---

[5] Again, this information is exclusive of 1977. Our calculation is based on Elaine's earnings ($66,924) as matched against David's contribution of $38,498 (representing earnings, plus student loan funds available for living expenses).

[6] See *In re Marriage of Sullivan* (1984) 37 Cal.3d 762 [209 Cal.Rptr. 354, 691 P.2d 1020].

by virtue of the couple's joint efforts and sacrifices, it was their greatest asset, and both should share in its benefits upon dissolution. The committee inquired whether existing law allowed for adequate compensation for the spouse who assisted his or her mate in attaining an education. At the hearings, a spokesperson for the California Law Revision Commission (CLRC) discussed the commission's legislative proposal for a reimbursement solution.[7]

Assembly Bill No. 3000 was drafted after the hearings and enacted by the Legislature in August 1984; it incorporated the CLRC proposal and additionally expanded the spousal support criteria set forth in section 4801 to include consideration of the nonstudent spouse's contribution to the student spouse's education or training. Thus, the new legislative scheme afforded two remedies, as appropriate, in cases where one spouse worked to put the other through school: (1) reimbursement and (2) support.

The new spousal support guideline is a companion to, but not duplicative of, the section 4800.3 right of reimbursement for community contributions to the student spouse's education. (See Hogoboom & King, Cal. Practice Guide: Family Law (Rutter 1989), §§ 6:88.2-6:88.4, rev. no. 1, 1990.) Although section 4800.3, subdivision (d), specifically states that reimbursement and loan assignment is the exclusive remedy for the education or enhanced earning capacity of a spouse, it also clarifies that nothing therein "shall limit consideration of the effect of the education, training, or enhancement, or the amount reimbursed . . . , on the circumstances of the parties for the purpose of an order for support pursuant to Section 4801." Thus Hogoboom and King suggest that a spouse might rely on section 4801, subdivision (a)(2), to claim a right to support while pursuing education or training for a new career or better paying job when he or she supported the other spouse through an advanced degree program. (*Id.,* at p. 6-91.)

■ We agree that section 4801, subdivision (a)(2), should be interpreted broadly to require consideration of *all* of the working spouse's efforts to assist the student spouse in acquiring an education and enhanced earning capacity. Where the nonstudent helped the student through school and into a higher earning career position, that spouse's contributions should be given weighty consideration by the trial court in deciding the propriety and extent of a spousal support award.

Nothing in the statutory language indicates that one spouse's contribution to the attainment of the other's education or career is limited to direct

[7]Shortly before the hearings, in September 1983, CLRC published its "Recommendation Relating to Reimbursement of Educational Expenses." (17 Cal. Law Revision Com. Rep. (1984) p. 229 et seq.)

education expenses. The notion of "contributing to the attainment" of an education is broader than the section 4800.3 concept of "payments made for" education or training. Common sense tells us that more goes into contributing to the attainment of an education than the mere cost of tuition, books and supplies. Many students who seriously pursue education or training forego full-time or even part-time remunerative employment, relying instead on other sources to provide for their necessities of life. Certainly, these other sources contribute to the student's attainment of an education. We thus hold that in the case of a career-threshold marriage where the working spouse provided a far greater share of living expenses while the student spouse acquired a professional degree, section 4801 requires the trial court to consider the totality of the nonstudent's contributions and efforts toward attainment of that degree, including contributions for ordinary living expenses.

■ Because the trial court either misconstrued the applicability of the section 4801, subdivision (a)(2), language, or made a finding contrary to the evidence concerning Elaine's contribution, we conclude the judgment must be reversed insofar as it denied Elaine spousal support.

### (4) *Lifestyle*

■ Elaine finally maintains that the trial court also erred in focussing exclusively on the parties' preseparation standard of living, which they *deliberately* maintained at a low level so that David could finish school. In this regard the trial court made a specific finding that "The parties contemplated an upward change in their financial circumstances should Petitioner obtain the necessary credentials, and licensing, in medicine, and should Petitioner thereafter practice medicine." Nevertheless, in applying the section 4801 criterion, the court ignored this finding and instead based denial of spousal support in part on the conclusion that since separation, Elaine had not experienced a lowering of that standard of living which she had attained during the marriage and, indeed, was self-supporting "beyond" that standard.

Pursuant to the language of section 4801 in effect at the time of trial, the standard of living of the parties was but one factor to weigh with other factors when deciding the propriety of an award. It is apparent from the statement of decision that in applying this factor, the trial court proceeded on a straight dollar-for-dollar comparison of marital and postseparation lifestyles. ■ Although the phrase "standard of living of the parties" perhaps at first glance appears unambiguous, our rules of statutory construction teach us that courts should look to the substance rather than the letter of the statute if absurd or unjust results follow from a literal interpre-

tation. (*Smith* v. *Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412, 420 [128 Cal.Rptr. 572].) Further, we are mindful that whenever possible, courts should give effect to the statute as a whole, including every clause, so that no provision is rendered useless or meaningless. (Code Civ. Proc., § 1858; *Carleson* v. *Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 145, 155-156 [134 Cal.Rptr. 278].)

■■■ With these principles in mind it is apparent that the trial court's application (and implied interpretation) of the standard of living factor led to absurd results. Such a dollar-for-dollar analysis ignores the fact that the parties consciously subjected themselves to a student standard of living, on the expectation of future improvement for the community's benefit.

Under these circumstances, the section 4801, subdivision (a)(2) factor becomes meaningless in the very instance where it should make a difference. This is because the flip side of the working spouse's contribution to living expenses and the student spouse's attainment of an education is the student's absence from the full-time work force. And that absence, of course, directly impacts the couple's standard of living. The spouse who primarily establishes the marital standard of living by virtue of his or her earnings and continues working after separation will rarely experience a further lowering of that standard. Therefore, if the court only looks at the deliberately depressed marital standard of living in these situations, the working spouse's subdivision (a)(2) contributions become irrelevant. We thus conclude that when applying the standard of living criterion to its spousal support determination, the trial court should not have denied spousal support *simply because* there was no dip in Elaine's standard of living after separation. Rather, the court should have taken into account the impact of David's absence from the full-time work force on that standard—an absence which, in reality, only benefited him.

### (5) ˙ *Remand*

Since we hold that the trial court improperly exercised its discretion in applying and interpreting the contribution to education and standard of living factors, and since we cannot discern how these errors affected the consideration of other spousal support criteria, we must remand the cause with directions to the trial court to reexercise its discretion, consistent with the principles enunciated herein.[8] In this regard the court may also, as appropriate, rereview whether to retain jurisdiction over spousal support.

---

[8] In August 1988 the Legislature once again amended § 4801, subdivision (a) (effective Jan. 1, 1989), to make the standard of living established during the marriage an overreaching ref-˙ erence point against which the court assesses the other spousal support factors. (Stats. 1988, ch. 407, § 1, p. 1555.) The trial court must also make specific factual findings concerning the

## B. *Reimbursement for Contribution to His Education*

■ Elaine's second attack concerns the trial court's ruling that there were no reimbursable community contributions to David's education. The record reveals that direct education expenses were paid from loan and grant funds. Elaine asserts that section 4800.3 does not limit "payments made with community property for education or training" to direct costs, and should be construed broadly with its remedial purpose in mind to include living expenses over the nine and one-half years of marriage.

Section 4800.3[9] remedies the injustice that often occurred when a couple separated on the eve of, or shortly after, a spouse's graduation or other educational accomplishment, long before that education could benefit the community. (*In re Marriage of Slivka* (1986) 183 Cal.App.3d 159, 167 [228 Cal.Rptr. 76].) Prior to its enactment, there was no right of the community

---

appropriate standard. Further, the amendments now require the trial court to generally recognize the extent to which the working spouse contributed to the student spouse's attainment of an education, rather than considering this factor only with respect to the earning capacity of each spouse.

The parties have not briefed the issue of whether the 1988 amendments would apply on remand, and consequently we express no opinion concerning their retroactive application.

[9] Section 4800.3 reads in its entirety: "(a) As used in this section, 'community contributions to education or training' means payments made with community property for education or training or for the repayment of a loan incurred for education or training. [¶] (b) Subject to the limitations provided in this section, upon dissolution of marriage or legal separation: [¶] (1) The community shall be reimbursed for community contributions to education or training of a party that substantially enhances the earning capacity of the party. The amount reimbursed shall be with interest at the legal rate, accruing from the end of the calendar year in which the contributions were made. [¶] (2) A loan incurred during marriage for the education or training of a party shall not be included among the liabilities of the community for the purpose of division pursuant to Section 4800 but shall be assigned for payment by the party. [¶] (c) The reimbursement and assignment required by this section shall be reduced or modified to the extent circumstances render such a disposition unjust, including but not limited to any of the following: [¶] (1) The community has substantially benefited from the education, training, or loan incurred for the education or training of the party. There is a rebuttable presumption, affecting the burden of proof, that the community has not substantially benefited from community contributions to the education or training made less than 10 years before the commencement of the proceeding, and that the community has substantially benefited from community contributions to the education or training made more than 10 years before the commencement of the proceeding. [¶] (2) The education or training received by the party is offset by the education or training received by the other party for which community contributions have been made. [¶] (3) The education or training enables the party receiving the education or training to engage in gainful employment that substantially reduces the need of the party for support that would otherwise be required. [¶] (d) Reimbursement for community contributions and assignment of loans pursuant to this section is the exclusive remedy of the community or a party for the education or training and any resulting enhancement of the earning capacity of a party. However, nothing in this subdivision shall limit consideration of the effect of the education, training, or enhancement, or the amount reimbursed pursuant to this section, on the circumstances of the parties for the purpose of an order for support pursuant to Section 4801. [¶] (e) This section is subject to an express written agreement of the parties to the contrary."

to reimbursement for expenditures made for education or training. The new remedy, however, is not unlimited.

The CLRC comment to section 4800.3 explains that the purpose of the provision is to authorize reimbursement of community expenditures for educational expenses that have benefited primarily one party to the marriage. It goes on to state: "Subdivision (a) does not detail the expenditures that might be included within the concept of 'community contributions.' These expenditures would at least include cost of tuition, fees, books and supplies, and transportation." (Cal. Law Revision Com. com., West's Ann. Civ. Code, § 4800.3 (1989 pocket supp.) p. 95 [Deering's Ann. Civ. Code, § 4800.3 (1989 pocket supp.) p. 102].)

From this comment, as well as the definition of community contributions to education or training, it is evident that the thrust of section 4800.3 is to require reimbursement for expenses that are related to the education experience itself. The married couple would incur ordinary living expenses regardless of whether one spouse is attending school, staying home, or working.

Elaine has pursued her reimbursement claim on the theory that section 4800.3 entitles the community to full reimbursement for *all* its contributions to living expenses over the nine and one-half-year period. She has failed to show what expenses, if any, were specially connected to David's education. There was no evidence produced at trial that the community paid for any education-related expenses, such as tuition, fees, or special living expenses incurred because of the education experience. Based upon such a lack of evidence, we conclude the trial court correctly ruled that the community made no reimbursable contributions pursuant to section 4800.3.

■ Elaine further argues that unless we construe section 4800.3 as encompassing reimbursement for all living expenses "it must be declared unconstitutional." In that event, she urges us to characterize the professional degree as community property, subject to valuation and distribution.

Elaine maintains that anything short of her proposed interpretation leads to due process and equal protection violations. Not so. There is no constitutionally recognized property interest in the form of a right to reimbursement for community property earnings which a spouse voluntarily spends for the couple's living expenses during marriage. Nor, as Elaine argues, does our construction of section 4800.3 impermissibly treat spouses differently according to whether the community benefits financially from the education or not. Whether the community benefits economically from the educated spouse's enhanced opportunities depends on the parties and the timing of career development relative to the date of separation, not on section 4800.3.

Furthermore, section 4800.3 by its terms mandates a more favorable result for the nonstudent spouse when the community reaps *no* advantage from the education. Where the community has already benefited substantially from the education of one spouse, section 4800.3 requires the court to *reduce or modify* reimbursement as necessary to prevent an unjust disposition. (§ 4800.3, subd. (c).)

▓▓ Finally, we reject Elaine's suggestion that this court declare David's medical degree community property. Section 4800.3, subdivision (d), makes it abundantly clear that reimbursement is the *only* remedy in California. The CLRC comment further explains: "Although the education, degree or license or the resulting enhanced earning capacity is not 'property' subject to division, community expenditures for them are properly subject to reimbursement." (Cal. Law Revision Com. com., West's Ann. Civ. Code, § 4800.3 (1989 pocket supp.) p. 95 [Deering's Ann. Civ. Code, § 4800.3, (1989 pocket supp.) p. 102].)

### IV. DAVID'S CROSS-APPEAL*

. . . . . . . . . . . . . . . . . . . .

### V. CONCLUSION

The judgment is affirmed in part and reversed in part, with directions to conduct further proceedings consistent with this opinion. David to pay costs on appeal.

Channell, J., and Perley, J., concurred.

---

*See footnote, *ante,* page 340.