122 Cal.Rptr.2d 220 (2002)
99 Cal.App.4th 1436
In re the MARRIAGE OF Linda Michele and Paul Louis ROMERO.
Linda Michele Romero, Respondent,
v.
Paul Louis Romero, Appellant.
No. E030759.
Court of Appeal, Fourth District, Division Two.
July 11, 2002.
*221 Law Offices of James S. Terrell, Victorville, and Valerie Ross for Appellant.
Robert J. O'Connor, Hesperia, for Respondent.

OPINION
GAUT, J.

1. Introduction

Husband Paul Louis Romero appeals from the trial court's post-judgment order denying his request for modification of spousal support based on a change in his *222 income as a result of his disability. Husband's sole claim on appeal is that the trial court erred in considering his new spouse's income in violation of Family Code section 4323, subdivision (b).
We conclude that, under the current law, the trial court is precluded from any direct or indirect consideration of a subsequent spouse's or nonmarital partner's income in determining or modifying spousal support. The record reveals that the trial court abused its discretion in considering the indirect effects of such income on husband's ability to pay and his standard of living. We reverse the court's order and remand for a new hearing on husband's request for modification.

2. Factual and Procedural History

Husband and his wife, Linda Michele Romero, were married for 28 years. Early in their marriage, wife worked while husband pursued his teaching credential and masters in school administration. During their marriage, husband and wife enjoyed various luxuries, including long vacations. In July of 1997, upon dissolution of the 28-year marriage, the trial court ordered husband to pay $1,200 per month in spousal support.
After the divorce, husband remarried and enjoyed a higher standard of living with his new spouse, who earned approximately $6,500 a month. Husband's new spouse had two children, both of whom were receiving voluntary or court-ordered support from their biological father. Husband and his new spouse lived in her home, which was located on a golf course, and had membership at the country club. On his income and expense declarations, husband reported approximately $5,000 in expenses, including $1,600 for the home and $700 for their country club fees and charges. Husband and his new spouse used their joint account to pay for their shared expenses.
Since the divorce, wife has experienced a lower standard of living. After declaring bankruptcy and losing the family home, she rented a room from her mother. She could no longer afford the same luxuries that she enjoyed during her marriage.
On August 17, 2000, after being diagnosed with Parkinson's disease and, as a result, taking early retirement, husband filed an order to show cause to reduce his spousal support obligation. Husband's gross income decreased from over $5,000 to approximately $3,000 per month.
On October 31, 2001, at the hearing on husband's order to show cause, the trial court found that, while husband's reduction in income constituted a material change in circumstances, such change did not require a reduction in spousal support based on the other factors listed in Family Code section 4320. The court made the following comments: "I don't see any way to avoid considering [new spouse's] income if we're going to consider [husband's] Income and Expense Declaration. Her income is set forth on the form. Her income is by implication at least partially responsible for paying [husband's] monthly debt. There's no way he could pay his monthly debt simply on his [$2,000] a month net income. [¶] I've read the code section referred to by [husband's counsel] that precludes the court from considering her income. I'm simply without any option. I don't see any other way to proceed other than to consider the family[husband's] current total family circumstances because those circumstances are intertwined inextricably with our analysis of [section] 4320, specifically in the area of standard of living." Based on its evaluation of the Family Code section 4320 factors, the court denied defendant's request for modification.

*223 3. Discussion

Husband claims the trial court erred in denying his request for modification of the spousal support order by considering his new spouse's income in violation of Family Code section 4323, subdivision (b). The question in this case is whether, despite the statute's prohibition against the consideration of a subsequent spouse or cohabitant's income in determining or modifying spousal support,[1] the court may account for the indirect effects of this additional income on other considerations, including the husband's ability to pay and his standard of living.[2]
Before Family Code section 4323, subdivision (b) became effective in 1994, the prevailing approach was that the courts were allowed to consider a subsequent spouse's income in determining whether to modify spousal support.[3] In Gammell v. Gammell,[4] after a 31-year marriage, the court ordered the husband to pay $325 per month in spousal support. When the husband retired, he sought a modification in the spousal support order. The trial court, after considering the husband and his new wife's income and expenses, found that the husband had the financial ability to continue paying under the original support order.
In response to the husband's argument that the court erred in considering his second wife's income in determining his ability to pay, the appellate court stated: "The California courts have held that, while a husband's remarriage does not alone justify reduction of support payments to his former wife, the remarriage with its additional burdens is a factor to be considered. [Citations.] Since a remarriage with its additional burdens is a factor to be considered in modifying support payments, it appears fair and equitable that a remarriage with its additional benefits also ought to be considered. Furthermore, spousal support is determined according to the needs of both parties and the respective ability of the parties to meet those needs. [Citation.] Although the second wife's income in this case is her separate property, as a pragmatic matter this income directly or indirectly reduces the needs of the husband and it directly or indirectly affects the husband's ability to meet the needs of his former wife."[5]
The court further noted that the husband's additional expenses resulting from his remarriage did not exceed his second wife's financial contribution to the marriage.[6] In fact, her income substantially compensated for his reduced salary.[7] Based on the husband and his second wife's shared income and expenses, the court found that there was no material *224 change of circumstances justifying the requested modification.[8]
In a case from this court, In re Marriage of Ramer,[9] the parties separated after having four children and being married for 22 years. During the new trial, which was ordered by this court, the trial court awarded the wife $900 in spousal support and $450 in child support for the one remaining minor child. With this sum, wife, who was unemployed, was required to pay over $500 in mortgage payments, property taxes, property insurance premiums, $247 for the minor child's special educational needs, and other living expenses for herself and her children.
In finding the spousal support ordered by the trial court to be grossly inadequate to meet the wife's necessary expenses, we looked to the net disposable income of both the husband and his new wife. We observed that together they had a monthly net disposable income of about $4,040.[10] We explained that the new wife's income is considered available to defray the shared expenses and, therefore, increases the amount available for support payments.[11] Based on their net disposable income, the husband and his new wife enjoyed a significantly higher standard of living than his former wife, who experienced a far lower standard of living than she enjoyed during the marriage. Based on this disparity, we concluded that the trial court abused its discretion in awarding the wife only $900 per month in spousal support.[12]
In In re Marriage of Tapia,[13] the trial court awarded the wife $306 per month in spousal support after the dissolution of a 23-year marriage. In arriving at this amount, the trial court did not consider the husband's nonmarital cohabitant's contributions to their shared expenses. Relying on Gammell and Ramer, the court in Tapia held that, regardless of the relationship between the housemates, the fact that they were sharing expenses logically affected each person's ability to pay other obligations.[14]
The court reasoned: "When a court assesses a party's ability to pay spousal support, it considers `"`"practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties." ... "It [includes] the needs of the parties and the ability of the parties to meet such needs;" ...'" [Citation.]' [Citation.] Such factors may include benefits in the form of gifts, receipts from parents or third parties, and income from earnings, investments, or trusts, or governmental aid. [¶] It is no less relevant that a party's basic living expenses are defrayed because household expenses are shared with another person."[15] Therefore, the court concluded that, although the person has no duty to pay spousal support, his or her *225 income is still relevant to the extent that it is used to defray the common household expenses.[16]
Based on the above cases, the former approach was that the trial court could consider the income of a new spouse or a nonspousal partner for the purpose of determining the party's expenses and ability to pay spousal support. In 1993, however, the Legislature rejected this approach when it passed Senate Bill No. 145, which added subdivision (b) to Family Code section 4323. That provision, which became effective in 1994, consisted of the following limitation: "The income of a supporting spouse's subsequent spouse or nonmarital partner shall not be considered when determining or modifying spousal support."[17]
To evaluate the effect of this legislation, we review the general rules of statutory interpretation. "In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] `We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citation.] If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such cases, we `"`select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'"' [Citation.]"[18]
While Family Code section 4323, subdivision (b) clearly forbids direct consideration of a new spouse's or nonmarital partner's income, the statute does not resolve the question of whether trial courts are precluded from indirect consideration of such income as it relates to the supporting spouse's ability to pay and standard of living.
We turn therefore to the legislative history. The legislative materials reveal the following analysis: "An argument in support of attributing some portion of new mate income to an obligee or obligor is that the additional income of the new mate helps pay some of the household expenses, and thus may free some additional amount of the obligee's or obligor's income that can be used to increase the amount of support being provided for the child of the obligee/obligor. [¶] Routinely allocating a set portion of new mate income ignores the fact that in many cases, the new mate may bring additional expenses, as well as additional income and so there may be no factual basis in a given case for finding there is some additional amount of the obligee/obligor income available for support. [¶] It is a question of public policy whether new mate income should be attributed to a parent without requiring a finding that the new mate income in fact frees additional income of the obligee/obligor for support."[19] By enacting Family Code section 4323, subdivision (b), the Legislature's response to this policy question was that regardless of the effect of the new mate's income on the supporting *226 spouse's finances, such additional income must not be taken into consideration.
In addition to adding subdivision (b) to Family Code section 4323, Senate Bill No. 145 made similar amendments to the child support provisions.[20] One notable difference, however, is that the child support amendments included an exception that new mate income may be considered to avoid extreme and severe hardship to the affected children.[21] This exception depends entirely on the needs of the children, rather than the needs of the parents.[22]
By contrast, spousal support is designed to meet the needs of the supported spouse, rather than any children. Children, therefore, do not provide any basis for a similar exception in the spousal support context. Legislative history indicates that the prohibition against the consideration of a new spouse or nonmarital partner's income is "without exception."[23] The Legislature clearly intended to completely exclude such income from the decision-making process.
We have found two appellate court cases that have mentioned the prohibition contained in Family Code section 4323, subdivision (b).[24] In both cases, however, the courts had no occasion to provide any analysis.
We look therefore to the cases in the child support context for further guidance. In In re Marriage of Wood,[25] after the wife's remarriage to a wealthy man, the husband requested a reduction in child support. In granting the husband's request, the trial court considered the new spouse's income only as it related to the wife's current standard of living or life-style.
In Wood, the appellate court stated that, "[a]lthough the trial court claimed only to take into account [the new husband's] income as it related to [the wife's] standard of living, this was tantamount to considering new mate income."[26] The court noted that the Legislature amended Family Code section 4057.5 to exclude consideration of new mate income in determining child support, absent extraordinary circumstances.[27] The court characterized the legislation as "a direct statutory prohibition" against the consideration of that factor.[28] Therefore, despite any other general rules affording the trial court discretion in regard to setting the amount of child support, the court erred in considering new mate income in the guise of other factors such as a parent's standard of living or lifestyle.[29]
*227 In agreement with Wood's analysis, the court in In re Marriage of Loh[30] added that the Legislature's use of the phrase "determining or modifying" was intended to encompass more than merely factoring into the equation. The court explained: "`Determining or modifying' are broad words in this statutory context. That is, they go beyond mere calculation of the guideline amount. If the Legislature had wanted to exclude new spouse or nonmarital partner income from merely the calculation of the guideline amount, it would have used the word `compute,' as it did in section 4059."[31]
These child support cases indicate that, in passing the amendments to Family Code section 4057.5, the Legislature intended to exclude both direct and indirect consideration of new mate incomeeven as it relates to other factors, including the supporting spouse's standard of living.[32] The statutory prohibition against the consideration of new mate income applies with equal or greater force in the context of spousal support, where the Legislature left no room for any exceptions.
Nevertheless, our inquiry does not end here. If direct and indirect consideration of new mate income is strictly forbidden, then how must the courts proceed when confronted with an income and expense declaration that reports shared expenses? Certainly, the Legislature did not intend to exclude new mate income, but include new mate expenses by doing nothing about the additional burdens created by the new marriage. As the earlier cases suggest, as a practical matter, the failure to take into account these additional burdens produces an unjust and inequitable result.[33] In this case, while husband reported his shared expenses, which included those expenses incurred by his new wife and her minor child, the statute prevents the court from considering how husband's new spouse's income was used to defray those expenses.
Although the current law fails to account for the shared expenses, we nevertheless are bound by the statutory language and Legislature's clear intent to exclude new mate income in spousal support matters. To effectuate the Legislature's intent and to avoid any absurd or unreasonable results,[34] we are compelled to conclude that the trial court must not only exclude the new spouse's income, but also the additional expenses resulting from the remarriage.
In other words, the court must consider only husband's part of the shared expenses. But how are the expenses to be divided? Any allocation of expenses, in effect, will take the new spouse's income into consideration. For example, if we ignore the actual contributions and divide the expenses in half, the income of the *228 spouse who contributes more to the community will be used to subsidize the income of the spouse who contributes less.[35] Also, certain expenses, such as a large mortgage payment, might not even exist but for the remarriage. In this case, it is impossible for husband to pay $1,600 for the house, as claimed on his income and expense declaration, with a net monthly income of about $2,000. Therefore, in order to comply with the statutory prohibition against considering new mate income, the trial court, in determining husband's ability to pay spousal support, must also eliminate from consideration all additional expenses resulting from the remarriage.
In this case, the court must determine what expenses are reasonable based only on husband's net monthly income. Under such circumstances, where the actual numbers would produce an inequitable result,[36] the trial court must exercise greater discretion based on all the available facts and every appropriate consideration.[37]
Although this solution is contrary to the Legislature's goals of uniformity and predictability,[38] we cannot find a more just and equitable solution based on the current law. In enacting the amendment to Family Code section 4323, the Legislature stated its clear public policy against holding new spouses financially responsible for supporting former spouses. As this case has shown, however, the shared income and expenses involved in a new marriage often has inevitable indirect effects on the supporting spouse's ability to meet the needs of the former spouse. As it stands, current law fails to provide a more predictable allocation of the shared expensesa matter best left to the Legislature.
In this case, the trial court ordered husband to continue to pay $1,200 per month in spousal support despite a material change in circumstance, namely, the reduction in husband's salary as a result of his disability. In arriving at its decision, the court indirectly considered husband's new wife's income as it related to husband's ability to pay and standard of living. Based on our analysis above, we conclude that the trial court abused its discretion in failing to apply Family Code section 4323, subdivision (b).[39] Therefore, we remand to the trial court for a new hearing on husband's request for modification.

4. Disposition

We reverse and remand for a new hearing on husband's request for modification of spousal support. In ruling on husband's request, the trial court must consider husband's reduced monthly net income and the relevant factors listed in Family Code section 4320 based on his reasonable expenses in light of his reduced income. *229 Each party shall bear its own costs on appeal.
We concur: RAMIREZ, P.J., and McKINSTER, J.
NOTES
[1] Family Code section 4323, subdivision (b).
[2] Family Code section 4320, subdivisions (c) and (d)."
[3] In re Marriage of Tapia (1989) 211 Cal. App.3d 628, 259 Cal.Rptr. 459; In re Marriage of Ramer (1986) 187 Cal.App.3d 263, 231 Cal.Rptr. 647; Gammell v. Gammell (1979) 90 Cal.App.3d 90, 153 Cal.Rptr. 169; see also In re Marriage of Williams (1984) 155 Cal. App.3d 57, 202 Cal.Rptr. 10 (child support); Fuller v. Fuller (1979) 89 Cal.App.3d 405, 152 Cal.Rptr. 467 (same).
[4] Gammell v. Gammell, supra, 90 Cal.App.3d 90, 153 Cal.Rptr. 169 (hereafter Gammell).
[5] Gammell, supra, 90 Cal.App.3d at page 93, 153 Cal.Rptr. 169.
[6] Gammell, supra, 90 Cal.App.3d at page 93, 153 Cal.Rptr. 169.
[7] Gammell, supra, 90 Cal.App.3d at page 93, 153 Cal.Rptr. 169.
[8] Gammell, supra, 90 Cal.App.3d at page 93, 153 Cal.Rptr. 169.
[9] In re Marriage of Ramer, supra, 187 Cal. App.3d 263, 231 Cal.Rptr. 647 (hereafter Ramer)
[10] Ramer, supra, 187 Cal.App.3d at page 272, 231 Cal.Rptr. 647.
[11] Ramer, supra, 187 Cal.App.3d at page 272, 231 Cal.Rptr. 647, citing Gammell, supra, 90 Cal.App.3d at pages 92-93, 153 Cal.Rptr. 169, and In re Marriage of Williams, supra, 155 Cal.App.3d at page 63, 202 Cal.Rptr. 10.
[12] Ramer, supra, 187 Cal.App.3d at page 273, 231 Cal.Rptr. 647.
[13] In re Marriage of Tapia, supra, 211 Cal. App.3d 628, 259 Cal.Rptr. 459 (hereafter Tapia).
[14] Tapia, supra, 211 Cal.App.3d at page 631, 259 Cal.Rptr. 459.
[15] Tapia, supra, 211 Cal.App.3d at page 631, 259 Cal.Rptr. 459.
[16] Tapia, supra, 211 Cal.App.3d at page 632, 259 Cal.Rptr. 459.
[17] Family Code section 4323, subdivision (b).
[18] Estate of Griswold (2001) 25 Cal.4th 904, 910-911, 108 Cal.Rptr.2d 165, 24 P.3d 1191.
[19] Assembly Committee on Judiciary, Analysis of Senate Bill No. 145 (1993-1994 Reg. Sess.) as amended June 28, 1993, page 2.
[20] Senate Bill No. 145 (1993-1994 Reg. Sess.), section 2.
[21] Family Code section 4057.5, subdivisions (a)(1) and (2); In re Marriage of Wood (1995) 37 Cal.App.4th 1059, 1067, 44 Cal.Rptr.2d 236.
[22] In re Marriage of Wood, supra, 37 Cal. App.4th at page 1067, 44 Cal.Rptr.2d 236.
[23] Assembly Committee on Judiciary, Analysis of Senate Bill No. 145 (1993-1994 Reg. Sess.) as amended June 28, 1993, page 1.
[24] In re Marriage of Serna (2000) 85 Cal. App.4th 482, 487, 102 Cal.Rptr.2d 188; In re Marriage of Reynolds (1998) 63 Cal.App.4th 1373, 1378, 74 Cal.Rptr.2d 636.
[25] In re Marriage of Wood, supra, 37 Cal. App.4th 1059, 44 Cal.Rptr.2d 236 (hereafter Wood).
[26] Wood, supra, 37 Cal.App.4th at page 1066, 44 Cal.Rptr.2d 236.
[27] Wood, supra, 37 Cal.App.4th at page 1067, 44 Cal.Rptr.2d 236.
[28] Wood, supra, 37 Cal.App.4th at page 1067, 44 Cal.Rptr.2d 236.
[29] Wood, supra, 37 Cal.App.4th at pages 1067-1068, 1071, 44 Cal.Rptr.2d 236; see also In re Marriage of Corman (1997) 59 Cal. App.4th 1492, 1501, 69 Cal.Rptr.2d 880.
[30] In re Marriage of Loh (2001) 93 Cal. App.4th 325, 112 Cal.Rptr.2d 893 (hereafter Loh).
[31] Loh, supra, 93 Cal.App.4th at page 337, 112 Cal.Rptr.2d 893.
[32] Loh, supra, 93 Cal.App.4th at page 337, 112 Cal.Rptr.2d 893; Wood, supra, 37 Cal. App.4th at pages 1068-1069, 44 Cal.Rptr.2d 236; see also In re Marriage of Butler & Gill (1997) 53 Cal.App.4th 462, 467, 61 Cal. Rptr.2d 781; but see County of Tulare v. Campbell (1996) 50 Cal.App.4th 847, 854, 57 Cal.Rptr.2d 902 (exception for tax liability).
[33] Tapia, supra, 211 Cal.App.3d at page 631, 259 Cal.Rptr. 459; Gammell, supra, 90 Cal. App.3d at page 93, 153 Cal.Rptr. 169.
[34] See In re Marriage of Watt (1989) 214 Cal.App.3d 340, 351-352, 262 Cal.Rptr. 783.
[35] See In re Marriage of Carlsen (1996) 50 Cal.App.4th 212, 219, 57 Cal.Rptr.2d 630.
[36] See, e.g., In re Marriage of Watt, supra, 214 Cal.App.3d at page 352, 262 Cal.Rptr. 783 (finding deliberately depressed marital standard of living); In re Marriage of Smith (1990) 225 Cal.App.3d 469, 485-486, 274 Cal.Rptr. 911 (finding that parties lived beyond means during marriage); In re Marriage of Sinks (1988) 204 Cal.App.3d 586, 592-594, 251 Cal. Rptr. 379 (using earning capacity based on party's deliberate attempt to avoid spousal support).
[37] See Family Code section 4320; see also In re Marriage of Cheriton (2001) 92 Cal.App.4th 269, 304, 111 Cal.Rptr.2d 755.
[38] Assembly Committee on Judiciary, Analysis of Senate Bill No. 145 (1993-1994 Reg. Sess.) as amended June 28, 1993, pages 1 and 2.
[39] See In re Marriage of Corman, supra, 59 Cal.App.4th at page 1501, 69 Cal.Rptr.2d 880.