Filed 7/28/23 Certified for Publication 8/18/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RHONDA S., as Conservator, etc.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN et al.,<br><br>Defendants and Respondents. | B318650<br><br>Los Angeles County<br>Super. Ct. No. 20STCV05001 |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Carolyn B. Kuhl, Judge.  Affirmed.

Kantor & Kantor, Lisa S. Kantor, J. David Oswalt; Law Offices of Kathryn Trepinski and Kathryn M. Trepinski for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Moe Keshavarzi, Robert J. Guite and Matthew G. Halgren for Defendants and Respondents.

————————————

Plaintiff and appellant Rhonda S. is the conservator, appointed pursuant to section 5350 of the Lanterman-Petris-Short Act (LPS; Welf. & Inst. Code,[1] § 5000 et seq.), of her adult son David S.  Plaintiff sued defendants and respondents Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals[2] for a declaration of their obligations, under LPS and the terms of David's health plan, to transport and accept for "assessment and evaluation" (each as defined in LPS) conservatees like David upon their conservators' demand.  The trial court sustained Kaiser's demurrer.  We affirm.

## BACKGROUND

Plaintiff and David are enrollees under an HMO health plan issued by Kaiser Health Plan.  David suffers from schizophrenia with symptoms of paranoia and psychosis.  He received treatment for his condition from Dr. Nathalie Maullin, a psychiatrist practicing at a Kaiser healthcare facility in Los Angeles's Chinatown neighborhood.

Dr. Maullin recommended plaintiff become David's conservator.  LPS conservatorships may be established only for persons who are "gravely disabled."  (§ 5350.)  A "gravely disabled" person includes one who, "as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter."  (§ 5008, subd. (h)(1)(A).)

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     We refer to defendants collectively as "Kaiser."  Where necessary to distinguish between them, we refer to Kaiser Foundation Health Plan, Inc. as "Kaiser Health Plan" and Kaiser Foundation Hospitals as "Kaiser Hospitals."

2

In September 2018, following a hearing attended by Dr. Maullin, the Los Angeles County Mental Health Court found David to be gravely disabled and appointed plaintiff his conservator. The conservatorship order authorized plaintiff to, among other things, "transport, or cause another to transport, [David] to a psychiatric facility designated by the County within the meaning of . . . Section 5150, or to a member of the attending staff of such facility, for purpose of evaluation for intensive treatment."

In April 2019, David became suicidal. Plaintiff contacted David's then-treating psychiatrist, Dr. Eric Lee, and requested that David be transported to the Kaiser Chinatown facility to be admitted and administered psychotropic medication. The Chinatown facility is a "facility designated by the county for evaluation and treatment" within the meaning of section 5008, subdivision (n),[3] a designation Kaiser voluntarily sought to obtain attendant rights and benefits under LPS. Dr. Lee explained he was unable to help plaintiff with her request. According to plaintiff's allegations, Dr. Lee alluded to a "personal mobile team that Kaiser used for transport, but he could not access it," and was unable, per Kaiser policy, to secure a bed for David under the circumstances.

---

[3] The parties use the term "county designated treatment facility," which is not defined in LPS but appears in section 5358.5. Because plaintiff's explanation of the process for becoming a "county designated treatment facility" is the same as that for becoming a "facility designated by the county for evaluation and treatment," we understand the parties to use "county designated treatment facility" as shorthand for "facility designated by the county for evaluation and treatment." We follow the parties' convention.

Three days later, Kaiser sent a follow-up letter to plaintiff regarding her requests for "David to be admitted to an inpatient psychiatric hospital without prior evaluation" and "[t]ransportation for David to a psychiatric hospital." It explained these requests had been denied as "not medically necessary" because David had not been evaluated by a doctor to validate plaintiff's concerns. The letter noted that plaintiff had declined Dr. Lee's offers of in-person and telephonic appointments in the preceding month, and that Kaiser had suggested that plaintiff "consider arranging an evaluation with the Psychiatric Mobile Response Teams . . . which can usually arrive within an hour." The letter further recommended "David present for an evaluation for possible psychiatric hospitalization," and that plaintiff call 911 for assistance from "an ambulance or law enforcement" if she was concerned David would not comply.

Plaintiff alleges she "did not want to ask for the assistance of law enforcement because it created a risk of harm to David, who was suffering from schizophrenia with symptoms of paranoia." Her allegations do not address Kaiser's alternative suggestion of requesting an ambulance.

After Kaiser sent its follow-up letter, "David continued to decompensate until he was ultimately apprehended by police and placed on a Section 5150 involuntary hold."

Plaintiff sued Kaiser, on her own behalf and on behalf of "[a]ll California residents who, during the Class Period, were LPS Conservators whose Conservatees were covered by a health plan or policy issued by [Kaiser Health Plan]." Her operative second amended complaint "seeks a declaration that, under [LPS], [Kaiser Hospitals] must accept for assessment and evaluation and, if necessary, treatment a conservatee who has been removed

4

to one of its county designated treatment facilities by a conservator pursuant to Section 5358.5" and a further "declaration that [Kaiser Health Plan] must provide insurance coverage for the transport of the conservatee to the county designated treatment facility pursuant to Section 5358.5 and, once transported, for the conservatee's assessment and evaluation at the Kaiser county designated treatment facility as required by [LPS]."

The trial court sustained Kaiser's demurrer to the second amended complaint. It found plaintiff had failed to adequately plead any basis for the duties she alleged Kaiser owed her. It found no such duties could arise under section 5358.5 because that section "does not create any rights or obligations of a county designated treatment facility vis-[á]-vis a conservatee or LPS conservator." And it found that no such duties could arise under section 5150 because plaintiff is not a member of the class of persons entitled to subject a person to custody under that provision. Finally, the trial court rejected plaintiff's claim for a declaration of Kaiser's obligations to transport a conservatee at the conservator's request because the claim was one to " 'provide coverage,' not a request for a declaration that Kaiser must comply with the requirements of the existing contractual agreement for coverage." The trial court gave plaintiff the opportunity to file a third amended complaint. Rather than do so, plaintiff requested dismissal and filed this appeal.

## DISCUSSION

### 1. Standard of Review

Although plaintiff acknowledges that a judgment on a cause of action for declaratory relief is sometimes reviewed for abuse of discretion, Kaiser argues that our review is de novo. As

5

it appears the relevant facts are undisputed and the issues turn on questions of statutory and contract interpretation, we review the judgment de novo. (Cf. *Widders v. Furchtenicht* (2008) 167 Cal.App.4th 769, 776 ["The sustaining of a demurrer on a claim for declaratory relief is generally reviewed for an abuse of discretion. [Citation.] Our review is de novo where the relevant facts are essentially undisputed and the issue involves statutory interpretation."].)

## 2. Declaratory Judgment

Code of Civil Procedure section 1060 provides that a party to a contract may bring an action to declare the legal rights and duties of the parties that are in "actual controversy." (*Ibid.*) Disputed rights and obligations arising by statute are likewise the proper subject of an action for declaratory relief. (See *Bess v. Park* (1955) 132 Cal.App.2d 49, 52 ["statutes are inherently proper subjects of declaratory relief"].)

The plaintiff must show that an actual controversy exists involving justiciable questions relating to the rights or obligations of a party. (*Brownfield v. Daniel Freeman Marina Hospital* (1989) 208 Cal.App.3d 405, 410.) "The 'actual controversy' requirement concerns the existence of *present* controversy relating to the legal rights and duties of the respective parties pursuant to contract [citation], statute or order." (*Ibid.*) "Where the allegations of the complaint reveal the controversy to be conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court, the fundamental basis of declaratory relief is lacking." (*Ibid.*)

## 3. Analysis

We consider plaintiff's requested declarations against Kaiser Hospitals and Kaiser Health Plan in turn.

### a. Kaiser Hospitals

Plaintiff first seeks a declaration that section 5358.5 authorizes an LPS conservator to cause the transport of her conservatee, who is enrolled in a Kaiser Health Plan HMO, to a Kaiser county-designated treatment facility without the aid of law enforcement. Plaintiff asserts in briefing that Kaiser does not dispute this proposition. In the absence of a dispute, declaratory relief is inappropriate and we affirm the trial court's denial of a declaration as to this issue. (See *Auberry Union School Dist. v. Rafferty* (1964) 226 Cal.App.2d 599, 603 ["Where it is apparent that the defendant does not actually oppose the position taken by the plaintiff, there obviously can be no controversy and there is nothing to be determined by the court."]; see also *Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 893 [in declaratory relief action where the defendant "never really disputed, and indeed, conceded" the plaintiff's interpretation, "declaratory relief would be inappropriate"].)

Plaintiff says in her reply brief, "the real question is what happens when the conservatee arrives at the Kaiser facility[?]" This brings us to plaintiff's second requested declaration—that, once a Kaiser-covered conservatee has been transported and delivered to a Kaiser county-designated treatment facility, the facility is "required to conduct an assessment and evaluation and, if necessary, placement of the conservatee under the provisions of [LPS]."

Put simply, plaintiff seeks a declaration that she, as a conservator, has authority under LPS to require Kaiser Hospitals to evaluate and treat her conservatee simply by delivering him to

a Kaiser county-designated treatment facility.  Plaintiff relies exclusively on section 5150 for this proposition.

Whether LPS imposes the obligations plaintiff claims is a question of statutory interpretation.  We apply well-settled rules of statutory construction to ascertain legislative intent.  We look first to the statutory language and give the words their usual and ordinary meaning.  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527.)  " ' "The statute's plain meaning controls the court's interpretation unless its words are ambiguous." ' " (*Ibid.*)  If the words are ambiguous, we may consider other interpretive tools, such as the statute's purpose, legislative history, and public policy.  (*Ibid.*)

We must follow the construction that " 'comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*Chaffee v. San Francisco Library Com.* (2004) 115 Cal.App.4th 461, 468.)  When possible, we "give effect to the statute as a whole, including every clause, so that no provision is rendered useless or meaningless." (*In re Marriage of Watt* (1989) 214 Cal.App.3d 340, 352; see also Code Civ. Proc., § 1858.)

Section 5150, subdivision (a) provides:  "When a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled, a peace officer, professional person in charge of a [county-designated treatment facility], member of the attending staff, as defined by regulation, of a [county-designated treatment facility], designated members of a mobile crisis team, or professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment,

8

evaluation, and crisis intervention, or placement for evaluation and treatment in a [county-designated treatment facility] and approved by the State Department of Health Care Services. The 72-hour period begins at the time when the person is first detained. At a minimum, assessment, as defined in Section 5150.4, and evaluation, as defined in subdivision (a) of Section 5008, shall be conducted and provided on an ongoing basis. Crisis intervention, as defined in subdivision (e) of Section 5008, may be provided concurrently with assessment, evaluation, or any other service."

Kaiser argues plaintiff lacks authority to trigger Kaiser Hospitals' obligations under section 5150, subdivision (a) because she is not a member of the limited class of persons—peace officers and certain designated professionals—the statute authorizes to do so. Kaiser also points to the statute's permissive language— that the specifically authorized persons "may, upon probable cause, take . . . the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment" (*ibid.*)—as establishing that a section 5150 process may be commenced only by a statutorily designated person in the exercise of their professional judgment.

Plaintiff acknowledges the permissive language but notes the statute contains mandatory language as well. In her reading, section 5150, subdivision (a)'s penultimate sentence requires a county-designated treatment facility, when a conservator presents her conservatee for care, to perform *"[a]t a minimum, assessment,* as defined in Section 5150.4, and evaluation, as defined in subdivision (a) of Section 5008" before making the decision whether to take the conservatee into custody.

Kaiser reasons, as the trial court did, that the obligations imposed by the penultimate sentence arise only after the professional determination has been made to take the patient into custody. In Kaiser's view, if such a decision has not been made, "the duty to assess has not been triggered."

Based on the plain language of section 5150, subdivision (a),[4] we agree with Kaiser that the penultimate sentence does not obligate a county-designated treatment facility to perform a section 5150.4 assessment and section 5008, subdivision (a) evaluation of a conservatee merely on his or her conservator's demand. Rather, these obligations are triggered only once an authorized person has exercised his or her professional judgment, on probable cause, to take the conservatee into custody in accordance with the first sentence of section 5150, subdivision (a).

First, plaintiff's interpretation of section 5150, subdivision (a)'s penultimate sentence fails to account for the word "ongoing." Plaintiff's interpretation would require Kaiser Hospitals to assess and evaluate a conservatee "on an ongoing basis" even in the absence of probable cause for custody and based solely on the judgment of a lay conservator. (*Ibid.*) This interpretation would lead to absurd consequences. The obligations of the penultimate sentence can therefore only arise after an authorized person makes the determination to take custody of the conservatee pursuant to the first sentence, whereupon assessment and evaluation are "ongoing" throughout the period of custody of up to 72 hours.

---

[4] Because we find the language of section 5150 unambiguous, we deny Kaiser's motion for judicial notice of certain LPS legislative history. (*Green v. Laibco, LLC* (2011) 192 Cal.App.4th 441, 449.)

Second, section 5150, subdivision (a) plainly states that custody may be taken of a person *in order to perform an assessment*. (*Ibid.* [authorized persons "may, upon probable cause, take . . . the person into custody for a period of up to 72 hours *for assessment*, evaluation, and crisis intervention, or placement for evaluation and treatment" (italics added)].)

Finally, section 5150, subdivision (c) does not change the analysis. That a professional person must "assess the person to determine whether the person can be properly served without being detained" does not mean the person is not in custody at the time of the assessment. Section 5150, subdivision (c) requires a professional person to ascertain through "assess[ment]" whether maintaining custody is appropriate. It does not require assessment before the person is in custody.

### b. Kaiser Health Plan

Plaintiff seeks declarations "[t]hat Kaiser Health Plan is required to provide coverage under Class members' health plans for an LPS Conservator's request for ambulance transportation of his or her conservatee to Kaiser county designated treatment facility for assessment and evaluation," and, "[t]hat once transported, Kaiser Health Plan is required to provide coverage under Class members' health plans for the conservatee's assessment and evaluation and, if necessary, placement at the Kaiser county designated treatment facility."

Plaintiff does not assert that Kaiser Health Plan owes any duty to her or David under LPS. The only source of Kaiser Health Plan obligations she identifies is David's health plan. We agree with the trial court that plaintiff failed to establish a right under the terms of David's health plan to the declarations she requests.

11

Plaintiff alleges that David's health plan provides coverage for ambulance services "if a 'reasonable person would have believed that the medical condition was an Emergency Medical Condition which required ambulance services.' " "Emergency Medical Condition" is further defined in the plan and includes mental health conditions under certain circumstances. Among other things, a mental health condition is an "Emergency Medical Condition" when manifested "by acute symptoms of sufficient severity" such that "[t]he person is immediately unable to provide for, or use, food, shelter, or clothing, due to the mental disorder." Plaintiff notes that inability to feed, clothe, or shelter oneself due to a mental disorder amounts to a "grave disability" under LPS (§ 5008, subd. (h)(1)(A)), and David was judicially determined to be gravely disabled when plaintiff was made his conservator.

Plaintiff's requested declaration that ambulance coverage is mandatory based solely on an LPS conservator's request for the conservatee's transport would substantially modify the terms of David's health plan.

First, we reject plaintiff's implication that an LPS conservatee is per se suffering from an "Emergency Medical Condition" at all times following the judicial determination of grave disability. The purposes of LPS conservatorship include providing treatment to the conservatee. (§ 5350.1.) To assume a conservatee's condition remains static following the conservatorship order is to assume treatment is always ineffectual. We are offered no basis for such an assumption. For a mental health condition to be an "Emergency Medical Condition" under the plan, "acute symptoms of sufficient severity" must result in an "immediate" specified danger or mental health disorder induced disability. Plaintiff's suggestion

12

that a past finding of grave disability results in a perpetual "Emergency Medical Condition" would read these elements out of the plan. Entitlement to coverage for ambulance service under David's plan is measured at the time of the request, not at the time of a prior judicial order.

Second, even if conservatees were in a state of perpetual "Emergency Medical Condition" within the meaning of the plan, plaintiff's requested declaration would eliminate the coverage requirement that a "reasonable person would have believed that the medical condition was an Emergency Medical Condition *which required ambulance services*." (Italics added.) Not every trip to see a doctor requires an ambulance. Considerations such as distance, alternative transportation options, traffic conditions, and the character and severity of the medical condition are relevant to whether an ambulance is required. Indeed, plaintiff's allegations reflect that, at the time of the episode that prompted her lawsuit, she did not believe an ambulance was *required*. At best, she believed an ambulance was *desirable*, provided it was sent by Kaiser and not by a 911 dispatcher. This is evident from the fact that she did not call 911 when her preferred avenues of obtaining an ambulance were unavailing, and days passed between her initial request for an ambulance and when David was apprehended and placed on a section 5150 hold.

Plaintiff's last requested declaration—"[t]hat once transported, Kaiser Health Plan is required to provide coverage under Class members' health plans for the conservatee's assessment and evaluation and, if necessary, placement at the Kaiser county designated treatment facility"—is not substantively addressed in her appellate briefing. We therefore

13

deem it forfeited.  (See *Rodriguez v. County of Los Angeles* (2013) 217 Cal.App.4th 806, 809, fn. 5.)

## DISPOSITION

The judgment is affirmed.  Defendants are to recover their costs on appeal.


GRIMES, J.


WE CONCUR:


STRATTON, P. J.


VIRAMONTES, J.


14

Filed 8/18/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RHONDA S., as Conservator, etc.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN et al.,<br><br>Defendants and Respondents. | B318650<br><br>Los Angeles County<br>Super. Ct. No. 20STCV05001<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION**<br><br>**[No change in judgment]** |

THE COURT:

The opinion in the above-entitled matter filed on July 28, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

STRATTON, P. J.             GRIMES, J.             VIRAMONTES, J.