37 Cal.App.4th 1059 (1995)
44 Cal. Rptr. 236
In re the Marriage of CAMILLA and WILLIAM WOOD, JR.
CAMILLA CASPARIS, Appellant,
v.
WILLIAM D. WOOD, JR., Respondent.
Docket No. H012827.
Court of Appeals of California, Sixth District.
August 15, 1995.
*1061 COUNSEL
Bernard N. Wolf for Appellant.
Crane & Crane and Molly Crane for Respondent.
OPINION
WUNDERLICH, J.
In this case, in adjusting a child support order between former spouses, we hold that the trial court erred in disregarding the provisions of new section 4057.5 of the Family Code.[1] Camilla Wood Casparis (Camilla) appeals from the judgment entered following a hearing on an order to show cause re child support filed by her ex-husband, William D. Wood, Jr. (William[2]). William's 1993 motion to reduce child support was based on consideration of the income of Camilla's new mate, then appropriate under Civil Code section 4721, subdivision (e), predecessor to section 4057.5. At the 1994 hearing, the trial court stated it was considering Camilla's new mate's income only as it related to her standard of living and that of the three children living with her, and the court did not allow detailed discovery or questioning of the new mate. For the reasons stated below, we reverse.

*1062 FACTS AND PROCEDURAL BACKGROUND
Camilla and William dissolved their marriage of almost 10 years in April of 1989. Pursuant to stipulation, the judgment of dissolution of marriage awarded Camilla physical custody of the parties' three minor children, and it ordered William to pay child support of $1,375 per month. A little over one year later on May 21, 1990, the trial court filed a stipulation and order which increased William's child support obligation to $1,600 per month. The order stated that the parties were modifying the level of support because William's income had increased to $86,200 per year. About two years later, in April, 1992, the trial court filed another stipulation and order. Child support was set at $2,100 per month based on William's and Camilla's present earnings.
This appeal is based on the next order adjudicating child support, made after William filed an order to show cause regarding reducing support. The basis for William's request was that special circumstances existed, in that Camilla had remarried and was married to a very wealthy man. In her responsive declaration Camilla stated she married William Casparis (Casparis) in July of 1992. She said that she was bound by a prenuptial agreement by which she and her children had no rights to Casparis's income, which was defined as his separate property.
William sought to obtain financial records from Casparis. He in turn filed a motion for an order quashing the subpena and for protective orders. Camilla and her new mate both objected to any consideration of the new mate's income in the child support proceeding.
The trial court heard William's order to show cause on May 11, 1994. The hearing largely consisted of offers of proof by the respective counsel, cross-examination of Camilla and her new husband, and the brief testimony of a vocational evaluation expert. The trial court purported to consider the income of Casparis only insofar as it impacted on the standard of living of Camilla and the three children.

CONTENTIONS
Camilla contends: 1) section 4057.5 precludes the consideration of new mate income when setting child support, and 2) the trial court erred by reducing the pre-1994 child support. William contends that the trial court did not commit an error of law, and that it did not abuse its discretion.

DISCUSSION
First we look to the statutory framework. Then we examine the trial court's order. Finally we examine the correctness of the trial court's order and its underlying analysis.
*1063 Under the compulsion of federal law, states have been required to adopt child support guidelines. California's attempt to cope with this compulsion has resulted in an extremely complex system. (In re Marriage of Fini (1994) 26 Cal. App.4th 1033, 1040 [31 Cal. Rptr.2d 749].) Instead of adopting a simple guideline, the California Legislature has adopted an algebraic formula to calculate the presumptively correct amount of child support. The computation usually requires the use of a computer and a software program. The presumption is rebuttable, and under certain special circumstances trial courts are permitted to set child support in an amount other than the computed guideline amount. (Former Civ. Code, §§ 4720 and 4721 now Fam. Code, § 4057.) When the trial court departs from the guideline amount, it is required to specify with particularity how and why it departed from the guideline. (See § 4056.) The presumption that the guideline amount is correct may be rebutted by admissible evidence showing that application of the formula would be "unjust or inappropriate" in the particular case. (See § 4057, subd. (b).) Section 4057, subdivision (b)(5) specifies that "[a]pplication of the formula [may] be unjust or inappropriate due to special circumstances...." A nonexclusive list of those special circumstances follows: 1) different time-sharing arrangements for different children; 2) equal time sharing but disparate housing costs; and 3) special needs children requiring greater-than-guideline support.
Also pertinent to this case is the predecessor statute, former Civil Code section 4721, subdivision (e). That former statute enumerated factors to rebut the presumption that the guideline amount was correct. One of those factors was new mate income.
Of particular importance here is current section 4057.5, enacted in 1993, effective January 1, 1994. So critical is this statute to our analysis that we quote subdivisions (a) and (b) in their entirety. "(a)(1) The income of the obligor parent's subsequent spouse or nonmarital partner shall not be considered when determining or modifying child support, except in an extraordinary case where excluding that income would lead to extreme and severe hardship to any child subject to the child support award, in which case the court shall also consider whether including that income would lead to extreme and severe hardship to any child supported by the obligor or by the obligor's subsequent spouse or nonmarital partner. [¶] (2) The income of the obligee parent's subsequent spouse or nonmarital partner shall not be considered when determining or modifying child support, except in an extraordinary case where excluding that income would lead to extreme and severe hardship to any child subject to the child support award, in which case the court shall also consider whether including that income would lead to extreme or severe hardship to any child supported by the obligee or by the *1064 obligee's subsequent spouse or nonmarital partner." Subdivision (b) provided: "For purposes of this section, an extraordinary case may include a parent voluntarily or intentionally quitting work or reducing income."[3] The Historical Note to the statute cites Governor Wilson's signature message in which he stated: "`This bill would eliminate the income of a subsequent spouse or nonmarital partner when determining or modifying child support except in those cases where excluding the income would lead to extreme and severe hardship to the child subject to the child support award....'" (See Historical & Statutory Notes, 29D West's Ann. Fam. Code (1994 ed.) § 4057.5.)

TRIAL COURT'S DECISION
The motion before the trial court was William's motion to reduce child support based on the income of Camilla's new mate. The court essentially found that this was an unusual case and that there were special circumstances justifying departure from the statutory formula amount of child support. The trial court was not ruling on a motion to discover Casparis's income, although that was pending and would have been taken up if the court ruled consideration of new mate income was appropriate. The court stated it was not taking into account the new mate income; however, it did plan to consider Camilla's lifestyle. This, of course, was another way of considering Casparis's income, as it impacted the lifestyle of Camilla and the three children. Thus, while the trial court did not permit extensive discovery into or questioning of Casparis regarding his annual income, it did learn enough to know that the Casparises were leading a very upper middleclass existence. The trial court did not attribute any income to Camilla, although Camilla had been working part-time, and was apparently able to work full-time, but either elected not to do so or was unable to find work.
Because it is necessary to our analysis, we quote at some length from the trial court's statement of decision. It stated: "[Camilla] is not currently employed but was employed until 1993 working in a business owned by her husband. She claims to now be seeking employment, and, frankly, while the Court suspects she is not frantically searching for work, there really isn't, at this time, sufficient evidence to base support calculations on her earning capacity. Her new husband is an incredibly capable entrepreneur. He makes his living by purchasing, improving, and selling businesses. He takes a modest salary while improving a business, but of course the sale brings a *1065 large influx of cash. For example, in 1992, he took almost $500,000.00 in wages from his company over and above $49,000.00 shown on his schedule E. His total income for the year was $585,000.00. This depleted the cash assets of the business which he sold the following year and still had a $270,000.00 capital gain in addition to $59,000.00 in income. Promissory notes were taken, and while the Court has no exact figure, another major influx in capital gain income will occur in 1997. The interest on the notes is $120,000.00 per year. In any event, it is apparent that the Petitioner, although she is unemployed, enjoys a decidedly upper middle class lifestyle as a result of the talents of her very talented husband. While the parties cannot be classified as rich, they are surely within the highest 2% of income in the United States. The Petitioner's husband, as part of the sale of his business, was required to give a covenant not to compete for five years. That has not prevented him from preparing to rehabilitate another business. If we spread the approximate $700,000.00 in income from the sale of the business (this includes the 1992 pre-sale salary clearly related to the upcoming sale) over a five year period (a rather long period, given the funds coming from a promissory note in 1997) the income averages $140,000.00 per year without considering modest income the Petitioner's spouse takes in salary when he is rehabilitating a company. The Court believes that those salaries would raise the average to almost $200,000.00. [¶] The Petitioner seeks support for three children with the Court attributing to her $33,000.00 per year, the figure she earned when working part time for her husband. The Court might increase the figure to $52,000.00 to reflect her capacity to be employed full time, but even if this Court does so, the Respondent father would, if the Court used the presumed correct figure for child support, pay approximately $1,820.00 per month for the three children, plus add-on expenses of day care. His earnings are approximately $105,000.00 per year, and his spouse earns $113,270.00 per year. There is obviously no need to include the income of said spouse into child support computations because Respondent has adequate funds to pay child support." If ordered to pay the guideline amount, "[William] would be justified in feeling some resentment as he wrote out each check for child support. His spouse will soon have a child for which he will also be required to provide support. His resentment would hamper communications between the parties which would ultimately inure to the children's detriment."
The essence of the trial court's decision was this: that it would be "unjust or inappropriate due to special circumstances" in this particular case to apply the formula guideline support. (§ 4057, subd. (b)(5).) Under County of Lake v. Antoni (1993) 18 Cal. App.4th 1102 [22 Cal. Rptr.2d 804] (County of Lake), the court in its discretion found that adherence to the guideline amount would be inappropriate. It would be inappropriate because of the phenomenal income of Camilla's new mate, and because the level of support would *1066 be confiscatory as to William, who himself was remarried and expecting a child. The court used its discretion rather than the formula to fix support for three different periods at issue in the case: May 14, 1993, through December 31, 1993 (under the old law, Civ. Code, § 4721, subd. (e)); January 1, 1994, through July 15, 1994 (new law including the prohibition on the use of the new mate income); and from July 15, 1994, forward, from which time William would be entitled to a hardship deduction created by the birth of his new child with his new wife. The court set the support for the first period at $1,350 per month, although the guideline support would have been much higher. This amount was a reduction of what William had been paying under the previous stipulation. Again, although it is not perfectly clear why, the trial court did not use an actual figure for Camilla's earning capacity, which it might have done as she had been working part-time up until the recent past. The court stated it would not be appropriate to take Camilla's earning capacity into account.

STANDARD OF REVIEW
(1) When the trial court exercises its discretion to depart from the statutory guideline amount of child support, as here, we review that departure for an abuse of discretion. (County of Lake, supra, 18 Cal. App.4th at p. 1103; In re Marriage of Fini, supra, 26 Cal. App.4th at p. 1044.)

ANALYSIS
(2) The primary issue on appeal is whether the trial court erred in considering new mate income in light of newly enacted section 4057.5. First, we characterize the trial court's ruling. Although the trial court claimed only to take into account Casparis's income as it related to Camilla's standard of living, this was tantamount to considering new mate income. The question becomes whether the discretion the trial court can exercise under 4057, subdivision (b)(5), (the "unjust or inappropriate/special circumstances" scenario), may overcome the specific mandate of section 4057.5. Under the circumstances of this case we believe the answer must be no.
Before the 1993 amendment, effective January 1, 1994, trial courts did have the authority to consider new mate income in a child support action. (See, e.g., In re Marriage of Williams (1984) 155 Cal. App.3d 57 [202 Cal. Rptr. 10]; Fuller v. Fuller (1979) 89 Cal. App.3d 405 [152 Cal. Rptr. 467].) In the Fuller case, for instance, the appellate court held it was proper for the trial court to consider the income of the nonmarital partner of the supporting spouse insofar as it enabled the supporting spouse to devote a little more of his income to supporting his children, rather than simply to *1067 supporting himself. In addition, the appellate court held it was appropriate to consider the value of certain assets that supporting spouse and his nonmarital partner owned. Again, as we have mentioned previously, new mate income was a statutorily permissible rebuttal factor, evidence of which was allowed to be introduced to rebut the presumption that the statutory guideline amount of child support was the correct amount in the case.
Briefly we return to the language of the statute. Section 4057.5, subdivision (a)(2) provides: "The income of the obligee parent's subsequent spouse ... shall not be considered when determining or modifying child support, except in an extraordinary case where excluding that income would lead to extreme and severe hardship to any child...." In our view, the only exception to the prohibition against looking to the new mate income of the supporting or the supported spouse is "extreme and severe hardship" to a child. What we think the statute means, then, is that unless a child will suffer if the court does not look to the new mate income of a spouse involved in the child support proceeding, then the court cannot consider such income.
We believe this is the case in spite of the language in subdivision (b) of the statute, which seems to shift the focus from the child's status to the parent's conduct. That subdivision now reads: "For purposes of this section, an extraordinary case may include a parent who voluntarily or intentionally quits work or reduces income, or who intentionally remains unemployed or underemployed and relies on a subsequent spouse's income." (§ 4057.5, subd. (b).)
Subdivisions (a) and (b) of section 4057.5 taken together mean that if a child would suffer extreme and severe hardship if the court does not look to new mate income, then the court must look to it. If the child may suffer because one of his parents quits working deliberately, then this is an extraordinary case in which the court may look to the income of the new mate of the spouse who has quit working, but the court can only consider this in order to prevent a hardship to the supported child. Both sections 4057.5 and 4057 define what is an extraordinary case or an inappropriate or unjust case by reference to the needs of the children. The examples given in section 4057, for instance, delineate exceptions based on the needs of the children, not the needs or conduct of the parents.
We are mindful of the general provisions respondent cites to us regarding each parent's duty to support his or her children, and the privilege of the children to share in the standard of living of their parents. Nonetheless, here we are facing a direct statutory prohibition on the consideration of a particular factor in the child support scenario. While the trial court here claimed to *1068 be looking to the lifestyle or "standard of living" evidence, we find it abused its discretion by considering Casparis's income.
The trial court relied on County of Lake, supra, 18 Cal. App.4th 1102. In that case the county had appealed from a child support order that set Antoni's support payment obligation at less than the presumptive amount under Civil Code former section 4721.[4] The county assigned error in that the trial court considered Antoni's support of his stepdaughter and his substantial consumer debt in setting the amount of child support. The appellate court held the trial court did not abuse its discretion. (18 Cal. App.4th at p. 1103.) Antoni was paying $100 per month to support his son who lived with his ex-wife when the county sought a modification to increase the child support. (Id. at p. 1104.) The mother relied on Aid to Families with Dependent Children payments to support the child. Antoni lived with his new wife, another son and a 17-year-old stepdaughter. His financial declaration showed extensive personal debt, apparently incurred for the necessities of life. Antoni's monthly income was $1,978, and monthly payments on his consumer debt amounted to $1,378. The presumptively correct amount under the mandatory guidelines was $419.06 per month. The trial court set the monthly child support at $294. The trial court found the presumptive amount was $494[5] but reduced it by $200 finding there were special circumstances that made the presumptive amount unjust or inappropriate under former section 4721, subdivision (e)(6) of the Civil Code. (18 Cal. App.4th at p. 1104.) The court cited two circumstances that made the presumptive amount inappropriate: that Antoni was supporting the two children living with him and he had a high amount of monthly debt service on account of debt incurred for necessities of life. (Id. at pp. 1104-1105.)
The appellate court found no abuse of discretion. Although the factors the trial court cited were not those enumerated in Civil Code former section 4721, subdivision (e), the list in the statute is not exclusive. Trial courts, after all, have considerable discretion in setting child support. The adjustment the trial court made for the high consumer debt and the supporting of the two children living with Antoni took into account the best interests of all the children. Again, there was no abuse of discretion. (18 Cal. App.4th at pp. 1105-1106; see also In re Marriage of Fini, supra, 26 Cal. App.4th 1033 [where mother's and father's incomes roughly equivalent trial court did not abuse discretion in not apportioning day care and uninsured medical costs); Estevez v. Superior Court (1994) 22 Cal. App.4th 423 [27 Cal. Rptr.2d 470] [trial court erred in ordering father to provide information regarding income *1069 in support modification proceeding where father stipulated he was a high earner who would pay any reasonable amount, and the guideline amount would greatly exceed the child's needs].)
County of Lake, supra, 18 Cal. App.4th 1102, interpreted the predecessor statute to current section 4057. The parallel provision now provides the presumption that the statutory amount is correct "is a rebuttable presumption affecting the burden of proof and may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case...." (§ 4057, subd. (b).) The statute then lists rebuttal factors, and those are: 1) the parties stipulated to a different amount of child support; 2) the sale of the family residence has been deferred; 3) the supporting parent has an extraordinarily high income; 4) one party is not contributing to the needs of the children at a level commensurate with his custodial time; and 5) application of the formula would be unjust or inappropriate due to special circumstances. The special circumstances include but are not limited to the following: 1) different time-sharing arrangements for different children; 2) equal time sharing of children and disparate housing costs; and 3) a child with special needs. Under section 4057, subdivision (b)(5), then, a case in which the court has discretion not to use the formula arises when application of the formula would be unjust or inappropriate due to special circumstances, and those special circumstances are not defined exhaustively although several examples are given.
The instant case is distinguishable from County of Lake, supra, 18 Cal. App.4th 1102. In County of Lake the trial court determined, in exercising its discretion, that high consumer debt and supporting several children were factors that should be taken into account, when the court set child support at less than the statutory amount. There was then no statute that said that high consumer debt could not be taken into account. That situation would be comparable to the one posed by the instant case.
Ordinarily we think that under the "unjust and inappropriate/special circumstances" exception, a trial court could make any equitable adjustment to the amount of child support, within reason. In this case, however, the trial court made an adjustment that the Legislature had specifically forbidden it to make. The trial court here took into account the income of Camilla's new spouse. The statute states: "[t]he income of the obligee parent's subsequent spouse ... shall not be considered when determining or modifying child support...." (§ 4057.5, subd. (a)(2), italics added.) In our view, the only time a trial court may consider new mate income is when not considering it will result in extreme hardship to a child. Otherwise, according to the Legislature, this new mate income is a factor which may not be taken into *1070 account. Subdivision (b) regarding a spouse who intentionally does not work applies when hardship to a child results because one spouse is deliberately not working. Then the court may consider that spouse's new mate's income. To sum up, the only exception to consideration of new mate income occurs when an extreme hardship results to a child.
(3) Camilla cites section 4[6] for the proposition that the trial court erred by reducing the pre-1994 child support. William filed his order to show cause to modify child support in May of 1993, but the trial court did not issue its order until June of 1994. The trial court set support at one level for May through January 1, 1993, and two different levels for the period after January 1, 1994. Camilla contends that section 4 required the trial court to apply the new law, section 4057.5, to all the child support in question including May through December of 1993.
We do not find section 4 to be a model of clarity. Camilla cites no case which stands for the proposition that this statute should be applied retroactively. The new law, section 4057.5, is, we think, substantive and not procedural. Before the new law passed a supporting spouse such as William was entitled to introduce evidence of the income of the new mate of his spouse. After January 1, 1994, a parent may not look to the high income of a subsequent spouse or nonmarital partner of an ex-spouse, the custodian of the children, except in certain extraordinary cases. Because the change is substantive the new statute applies only to the time after which it became operative, that is, January 1, 1994. Under the circumstances, the trial court did not err in applying the old law to the period before January 1, 1994, and the new law to the period afterwards. As discussed, however, the court erred by ignoring the new law.
*1071 We need not reach the final issue of the effect of the prenuptial agreement. However, our reading of section 4057.5 tells us that first there must be a potential extreme hardship to a child, and then a trial court may consider new mate income. This we think the trial court would be able to do, regardless of any prenuptial agreement. The parties and the trial court here seem to have lost sight of the fact that the supported children are supposed to be the beneficiaries of the Family Code. Only if a child would suffer may the trial court look to new mate income, and then it must do so. Otherwise, under our current legislative scheme, consideration of new mate income is not permitted.
We conclude the trial court abused its discretion by considering new mate income. At oral argument the parties debated the appropriate standard of review to apply in this case in that Camilla contended that the trial court erred as a matter of law by failing to follow section 4057.5. Even if we reviewed the issue de novo, we would still find error because the court improperly considered new mate income under the guise of lifestyle in violation of section 4057.5.
The problem before the trial court on remand is straightforward. Using the statutory formula, the trial court should insert William's income and attribute earning capacity to Camilla, and arrive at a guideline figure. If no supported child will suffer extreme hardship under the guideline amount, the court may not consider the income of the new spouses of William and Camilla.

DISPOSITION
The trial court's order setting child support after taking into account Camilla's new mate's income is reversed. The case is remanded for further proceedings consistent with this opinion. Each party to bear his or her own costs and fees on appeal.
Bamattre-Manoukian, Acting P.J., and Mihara, J., concurred.
Respondent's petition for review by the Supreme Court was denied December 14, 1995. Mosk, J., and Baxter, J., were of the opinion that the petition should be granted.
NOTES
[1] All statutory references are to the Family Code unless otherwise specified.
[2] For ease of reference, we refer to the parties by their first names. Since Camilla's new spouse is also named William, we refer to him by his last name only. (See In re Marriage of Smith (1990) 225 Cal. App.3d 469, 475-476, fn. 1 [274 Cal. Rptr. 911].)
[3] The 1994 amendment to subdivision (b) refined the thought and the language. It now reads: "For purposes of this section, an extraordinary case may include a parent who voluntarily or intentionally quits work or reduces income or who intentionally remains unemployed or underemployed and relies on a subsequent spouse's income." (§ 4057.5.)
[4] See now Family Code section 4057.
[5] The trial court found the amount to be $494 rather than $419, because it did not apply a hardship deduction for the son living with Antoni.
[6] Section 4 provides in pertinent part as follows: "(b) This section governs the application of the new law except to the extent otherwise expressly provided in the new law. [¶] (c) Subject to the limitations provided in this section, the new law applies on the operative date to all matters governed by the new law.... [¶] (d) If a document or paper is filed before the operative date, the contents, execution, and notice thereof are governed by the old law and not by the new law; but subsequent proceedings taken after the operative date concerning the document or paper, including an objection or response, a hearing, an order, or other matter relating thereto is governed by the new law and not by the old law. [¶] (e) If an order is made before the operative date, or an action on an order is taken before the operative date, the validity of the order or action is governed by the old law and not by the new law. [¶] ... [¶] (g) If the new law does not apply to a matter that occurred before the operative date, the old law continues to govern the matter notwithstanding its repeal or amendment by the new law. [¶] (h) If a party shows, and the court determines, that application of a particular provision of the new law or of the old law in the manner required by this section or by the new law would substantially interfere with the effective conduct of the proceedings or the rights of the parties or other interested persons in connection with an event that occurred or circumstance that existed before the operative date, the court may, notwithstanding this section or the new law, apply either the new law or the old law to the extent reasonably necessary to mitigate the substantial interference."