[No. C057851. Third Dist. Oct. 6, 2009.]

In re the Marriage of ELIZABETH and THOMAS L. KNOWLES.
ELIZABETH ANASTASI, Appellant, v.
THOMAS L. KNOWLES, Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of II through V.

COUNSEL

Bill J. Cook Law Corporation and Bill J. Cook for Appellant Thomas L. Knowles.

Les Hait Law Corporation and Les Hait for Appellant Elizabeth Anastasi.

OPINION

NICHOLSON, Acting P. J.—Family Code section 4057.5, subdivision (a)(1) prohibits consideration of the income of a subsequent spouse when modifying child support. Here, the father and his subsequent spouse owned substantial community assets, which generated income. In modifying a child support order, the trial court considered, as the father's income, all of the community income of the father and his subsequent spouse. In the published portion of this opinion, we conclude that the trial court violated Family Code section 4057.5, subdivision (a)(1) by considering the half of the community income attributable to the subsequent spouse when it modified the father's child support obligation.

Accordingly, we reverse the trial court's modification of the father's child support obligation and remand for further proceedings.

In the unpublished portion of this opinion, we reject the remainder of the father's contentions on appeal, as well as the mother's contention raised in her appeal.

## BACKGROUND

This is a brief summary of the proceedings. More specific descriptions of the proceedings are provided as they become relevant to the discussion of the issues raised by the parties. For brevity and clarity, we refer to the parties and others by their first names.

Thomas and Elizabeth are the parents of one minor child, Carter. They share custody of the child equally.

On January 6, 2005, Elizabeth filed a motion to increase Thomas's child support obligation. She stated that, since 1995, child support paid by Thomas has been $506 per month.

After prolonged proceedings, the trial court issued a statement of decision and judgment on November 7, 2007. The statement of decision and judgment

modified child support from Thomas to Elizabeth to $1,557 per month. The court made the order retroactive to January 6, 2005, the date of Elizabeth's original motion to modify child support. The court also ordered Thomas to pay $20,000 in attorney fees for Elizabeth.

In addition to the support modification and the award of attorney fees, the statement of decision and judgment provided for an order to show cause why Thomas's current wife, Sara, who is an attorney and originally represented Thomas in his opposition to Elizabeth's motion to modify child support, should not be ordered to pay sanctions based on her actions while she represented Thomas. The court determined that it would report Sara's misconduct to the California State Bar.

On December 12, 2007, the court ordered Sara to pay Elizabeth $2,000 in sanctions.[1]

Both Thomas and Elizabeth appeal.[2]

## THOMAS'S APPEAL

### I

### Community Property Income

Thomas contends the trial court erred by using all of the community property income of his subsequent marriage to Sara for the purpose of computing child support. He asserts that the trial court was limited to using the community income attributable to him only and that it was error also to

---

[1] On appeal, Thomas asserts that we should reverse the sanctions order against Sara and the trial court's decision to report her conduct to the California State Bar. Because Sara has not filed a notice of appeal, we are without jurisdiction to consider this assertion. When a sanctions ruling is imposed only upon a party's attorney, the attorney is the aggrieved party with the right to appeal. (*Calhoun v. Vallejo City Unified School Dist.* (1993) 20 Cal.App.4th 39, 42–43 [24 Cal.Rptr.2d 337].) Absent any attempt to appeal by the sanctioned party, the sanction ruling is not reviewable. (*Ibid.*)

[2] Thomas's briefing on appeal, in particular, his reply brief, is full of the vitriol that is anathema to civil and professional conduct essential to the resolution of family law disputes. No less than eight times does Thomas's counsel accuse Elizabeth's counsel of unprofessional conduct, mainly because Thomas's counsel disagrees with the way in which Elizabeth's counsel interprets the law or the facts. Thomas's counsel also accuses the trial judge of bias and refers to the judge in a condescending manner. Arguing against Elizabeth's contention of error in her appeal, Thomas's brief states that the judge "didn't get it _all_ wrong." (Original italics and underscoring.)

"Because of the complex and sensitive nature of marriage dissolution proceedings, it is in the best interests of both parties to resolve all issues expediently and congenially . . . ." (*In re Marriage of Norton* (1988) 206 Cal.App.3d 53, 58 [253 Cal.Rptr. 354].)

use the community income attributable to Sara. Based on Family Code section 4057.5, subdivision (a)(1), we agree.

A. *Background*

Neither party presents a particularly coherent account of Thomas's wealth and income because each picks and chooses what evidence to present. The trial court, however, made findings in this regard, and the parties did not contest those factual findings, even if they now contest the legal effect of those findings. Accordingly, we base our summary of Thomas's wealth and income on the court's statement of decision. (See *Rael v. Davis* (2008) 166 Cal.App.4th 1608, 1617 [83 Cal.Rptr.3d 745] [we accept facts in statement of decision].)

Thomas had worked full time as the ranch manager for Knowles Ranch. He was an equal partner with his father and mother and took a partnership draw in lieu of a salary. In December 2005, however, he stopped working for the partnership, partly because he had been successful in some real estate investments. Thomas abandoned all earned income to begin a commercial charter aircraft business, which is not a profitable venture. Based on Thomas's former work as a ranch manager, the trial court imputed an income earning ability on Thomas's part of $50,000 per year, or $4,166 per month.

As a result of investments made after their marriage, Thomas and Sara enjoyed capital gains in 2004 and 2005 of more than $3.1 million. Much of these gains were invested in a brokerage account at A.G. Edwards and a real estate development in Chico called Meriam Park. The money in the A.G. Edwards account was held in Sara's name alone. According to the court, Thomas and Sara "testified that this was for 'convenience' rather than to hide [Thomas's] wealth during this litigation."

In addition to Thomas's imputed earned income of $4,166 per month, the trial court also determined that a reasonable return on Thomas's investments would be $18,450 per month, which includes $10,950 from the brokerage account and $7,500 from the real estate development. The trial court used these figures as Thomas's monthly income in calculating his child support obligation.

Although the brokerage account and real estate development investment are community property of Thomas and Sara, the trial court considered the full amount in determining a reasonable return on those investments. In other words, the trial court did not reduce the value of the investments by 50 percent as a result of Sara's half ownership. The trial court stated: "[Thomas] has taken the position that his income should be reduced by 50 percent

because it is all 'community income.' While the latter point is no doubt true, all earnings of married people are community, absent a binding agreement to the contrary. There is an exception to the rule that the income of a party is available for child support when that income is earned by the [subsequent] spouse. However, no statutory or case law has been presented or identified that stands for the proposition that capital gains, or other passive community property income of a party, such as interest income, or dividends income, should be divided for support purposes with a new spouse, making half of it unavailable for child support. Public policy points directly in the opposite direction."

### B. Analysis

On appeal, Thomas renews his objection to the trial court's use of the full amount of the community property brokerage account and real estate development investment in determining Thomas's child support obligation. He claims that the court violated Family Code section 4057.5, subdivision (a)(1) which prohibits consideration of the income of a subsequent spouse when modifying child support, except in some extraordinary circumstances involving extreme hardship.[3] He asserts, in effect, that the trial court should have found a monthly return of $9,225 on the investments, rather than $18,450.

Prior to 1994, trial courts had the authority and discretion to consider a new spouse's income when setting a child support award. (*In re Marriage of Wood* (1995) 37 Cal.App.4th 1059, 1066 [44 Cal.Rptr.2d 236] (*Wood*), disapproved on other grounds in *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 187 [46 Cal.Rptr.3d 49, 138 P.3d 200].) However, Family Code section 4057.5 now expressly prohibits courts from considering a subsequent spouse's income when determining or modifying child support, except in very limited circumstances.

In *Wood*, the mother was unemployed but claimed to be looking for work. The trial court did not impute any income to her for purposes of calculating child support. However, the court did consider the income of her new spouse, a wealthy, successful businessman. (*Wood, supra*, 37 Cal.App.4th at pp. 1064–1065.) Citing Family Code section 4057, the trial court found it

---

[3] Family Code section 4057.5, subdivision (a)(1) provides: "The income of the obligor parent's subsequent spouse or nonmarital partner shall not be considered when determining or modifying child support, except in an extraordinary case where excluding that income would lead to extreme and severe hardship to any child subject to the child support award, in which case the court shall also consider whether including that income would lead to extreme and severe hardship to any child supported by the obligor or by the obligor's subsequent spouse or nonmarital partner."

would be " 'unjust' " to apply the child support guidelines because of the "phenomenal income" of the wife's subsequent spouse. (*Wood, supra,* at p. 1065.)

The *Wood* court concluded that the trial court abused its discretion by considering the subsequent spouse's income. (*Wood, supra,* 37 Cal.App.4th at p. 1071.) Family Code section 4057.5 permits consideration of subsequent spouse income only if the child would suffer extreme and severe hardship. The court must look to the needs of the child, not the needs or conduct of the parents. (37 Cal.App.4th at p. 1067.)

■ Here, the trial court considered all the community property income, including Sara's half, when calculating Thomas's support obligation. In doing so, the trial court made no finding of extreme or severe hardship. Thus, the trial court violated Family Code section 4057.5, subdivision (a)(1).

Income generated from community property is community income, and an equal, undivided interest in that income is attributable to each spouse. (See Fam. Code, § 751 [spouses have equal interest in community property]; *United States v. Malcolm* (1931) 282 U.S. 792 [75 L.Ed. 714, 51 S.Ct. 184] [each spouse must report and pay taxes on half of community income].) Therefore, the trial court erred by including Sara's half of the community income when calculating Thomas's child support obligation.

■ As did the trial court, Elizabeth relies on Family Code section 4008 to support the use of Sara's half of the community income. Family Code section 4008 provides: "The community property, the quasi-community property, and the separate property may be subjected to the support of the children in the proportions the court determines are just." This statute is not inconsistent with our interpretation of Family Code section 4057.5. While, pursuant to Family Code section 4008, the obligor parent's community interest in the income of the subsequent spouse may be looked to in *discharge* of the child support obligation (*In re Marriage of Brown* (1979) 99 Cal.App.3d 702, 705 [160 Cal.Rptr. 524]), the court may not consider the subsequent spouse's community income in *calculating* the child support obligation. The trial court erred when it failed to make this distinction and interpreted Family Code section 4008 as allowing it to consider Sara's community income in calculating Thomas's support obligation.

■ We also disagree with the trial court's statement that "no statutory or case law has been presented or identified that stands for the proposition that capital gains, or other passive community property income of a party, such as interest income, or dividends income, should be divided for support purposes with a new spouse, making half of it unavailable for child support." Family

Code section 4057.5 is the law that prohibits use of the community income attributable to the subsequent spouse, whether the income is earned or is a return on investments, in calculating a child support obligation.

█ Finally, Elizabeth cites the trial court's invocation of public policy as a reason to uphold the court's determination. According to her, that public policy is to interpret the term "income" broadly when calculating a child support obligation. To the contrary, when a statute is on point, the public policy of this state is contained in that statute. (See *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71–72 [78 Cal.Rptr.2d 16, 960 P.2d 1046] [Legislature vested with authority to declare public policy].) The public policy of this state concerning the use of a subsequent spouse's income in calculating a child support obligation is found in Family Code section 4057.5.

Elizabeth asserts that we should affirm even if the trial court erred in applying Family Code section 4057.5 because the court could have arrived at the same figure by different means, such as finding an extreme or severe hardship or by applying Thomas's capital gains as income for the purpose of calculating support. In support of this assertion, Elizabeth cites authority for the proposition that we affirm a correct judgment even if the trial court's rationale was wrong. (See, e.g., *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473] [we uphold ruling if correct on any basis, even if that basis not invoked].) That proposition, however, is not applicable here because it is not at all clear that the trial court would have arrived at the same amount of child support had it properly applied Family Code section 4057.5. In fact, we find it rather unlikely that the trial court would have arrived at the same amount had it properly applied the law. The court specifically stated how it arrived at the support figures in its statement of decision. It did not find an extreme or severe hardship and did not justify its decision by any means other than considering Sara's income in its calculation of Thomas's support obligation.

Accordingly, we must reverse and remand for the trial court to make a new determination concerning Thomas's child support obligation, without violating Family Code section 4057.5.[4]

II–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[4] Although we must reverse, we consider the parties' remaining contentions for guidance of the trial court on remand.

*See footnote, *ante*, page 35.

## DISPOSITION

The order modifying Thomas's child support obligation is reversed and remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Robie, J., and Butz, J., concurred.