Filed 2/4/21  Marriage of Heath CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re the Marriage of JANE and TERRY HEATH.<br><br>JANE E. HEATH,<br>        Appellant,<br>v.<br>TERRY J. HEATH,<br>        Appellant. | A157626<br><br>(San Mateo County<br>Super. Ct. No. FAM0119548) |

This appeal and cross-appeal arise out of the trial court's June 2019 order granting Terry Heath's motion to modify child support.  We reverse the order modifying child support, concluding the court erred in considering the spousal support received by Jane Heath from Terry as a special circumstance warranting departure from the child support guideline.  (Fam. Code, §§ 4056–4076, 4057, subd. (b)(5).)[1]  On remand, the court must recalculate the amount of child support payable from Terry to Jane from September 1, 2016 until each child reached the age of majority.

---

[1] Undesignated statutory references are to the Family Code.  We refer to the parties by their first names for convenience and clarity, intending no disrespect.

1

FACTUAL AND PROCEDURAL BACKGROUND

Jane and Terry married in 1992. They have two daughters, one born in 1999 and another born in 2001. The family lived in California, then moved to New Jersey. In 2010, Jane and Terry divorced. A judgment of divorce entered in New Jersey incorporated the parties' settlement agreement. Pursuant to that agreement, Terry agreed to pay Jane spousal support of $130,000 per year. Subject to exceptions not relevant here, this amount was not modifiable until the late 2020s. Terry also agreed to pay Jane annual child support of $25,000 until each child reached the age of 23, if the child was attending secondary school, vocational training, or college. The child support award was subject to modification based on the laws of California, where the parties agreed Jane could move.

Jane moved to California and sought an upward modification of child support. In 2013, the parties entered a stipulated order in San Mateo Superior Court requiring Terry to pay monthly child support of $2,500 per child until each child "reaches age 19, or reaches 18 and is not a full time high school student, whichever occurs first." At that time, Terry was earning $375,000 annually.

A.

*Terry's Motion to Modify Child Support*

In August 2016, Terry moved to modify child support. He argued a downward modification of child support was warranted because he had lost his job and his severance had expired. Terry also urged the court to order Jane to seek full-time employment. Jane agreed to guideline child support but opposed the seek work order. Among the reasons for her opposition, Jane noted she had custody of the children 84 percent of the time and that her only income was spousal support.

2

Shortly after filing the motion, Terry began a new job as chief executive officer for Sciens Building Solutions (Sciens). His annual salary was $200,000. Terry was eligible to receive an annual bonus of up to $150,000, and his compensation package included shares of his company's stock. Terry had liquid assets of $392,000.

At the September 2016 hearing on the motion, the parties discussed Terry's stock. Terry's counsel acknowledged Terry received "preferred stock." When the court asked "how much," Terry responded: "150,000 preferred stock, which . . . can't be sold until the company . . . sells itself." Terry explained, "it's not money that I have access to, but I was required to invest . . . in the preferred stock of the company." Later, Terry's attorney stated the stock was worth "[n]othing right now."

Terry's counsel urged the court to deviate from the child support guideline under the "special circumstances" exception in section 4057, subdivision (b)(5), arguing Terry would have little disposable income after paying nonmodifiable spousal support. Counsel for Jane objected, noting Terry had made a decision to take a lower-paying job and that Jane was already using her spousal support to care for the children. According to Jane, deviating from the child support guideline was not in the children's best interest.

The court agreed with Terry. It concluded that setting the child support at the guideline—$3,479—would leave Terry with net income of $1,069 and Jane with net income of $11,693. This result, the court observed, was not in the best interest of the children because it would not leave Terry with sufficient funds to provide for his own housing. The court set the child support payment at $0 but ordered Terry to pay Jane $2,000 per month in

child support as an "advance" against his potential bonus or other income.[2]  If Terry did not receive a bonus, or if he received a lower bonus, the monthly advances would be credited "for whenever he is making more money to offset" against future child support obligations.

Next, the court "allocate[d] 10 percent of the stock [Terry] received as income."  When the stock could be sold, Terry was ordered to "cash those stocks" at Jane's request "for the minor children."  The court further ruled that income Terry received in addition to his base salary—such as a bonus—would be allocated to child support pursuant to an *Ostler-Smith*[3] schedule.

Finally, the court declined to impose a seek work order because Terry was not behind on child support payments.  The court also observed that while Jane could work while the children were in school, her employment would have little effect on Terry's child support obligation because Jane had custody of the children 84 percent of the time.  However, the court invited Terry to seek a vocational evaluation of Jane, who had not worked in 17 years.  Terry did not purse this offer.

Terry did not object to any of these rulings.  The court directed counsel to submit a proposed order.

---

[2] The court announced its decision to order the $2,000 per month "advance" immediately after asking Terry how much money he had in the bank.  Terry replied, "[$]380,000."  This suggests that, though the court felt Terry's income was insufficient to pay guideline support, Terry had savings from which to pay the "advance" until such time as he received his anticipated bonuses.

[3] *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 37 holds a trial court has discretion to order the supporting spouse to pay an additional sum for spousal and child support based on a percentage of future bonuses that spouse receives.

4

B.

*March 2019 Written Order*

Over the next two and a half years, counsel exchanged proposed orders but could not agree on the language regarding Terry's stock. The parties submitted their own proposed orders to the court in March 2019. Terry's proposed order stated that pursuant to his employment contract, he received cash for the mandatory purchase of Sciens "Series A Preferred Stock." Terry's order further stated that he would pay Jane additional child support comprised of "10% of the value of the [s]tock upon an income producing event," such as when the stock "becomes sellable, or if the [s]tock is otherwise liquidated or cashed-out." Jane's proposed order stated Terry "had received $150,000 in cash for the purchase of 150,000 shares of Stock." Jane's order stated Terry would pay, as additional child support, "10% of the shares of Stock received by Father."

A few days later, the court issued a written order. The order states the child support award is "$0 per month" based on the special circumstance (§ 4057, subd. (b)(5)) that Terry paid $130,000 in nonmodifiable spousal support and a guideline order would result in him having less than $1,000 in net income and Jane having in excess of $11,500. According to the court, a guideline order would leave Terry with insufficient funds to care for the children during his custodial time.

The court awarded non-guideline child support of $2,000 per month as an "advance against the additional child support owed by [Terry] from anticipated bonuses and additional income . . . at his new job. If there is no bonus or additional income, then the amounts advanced as child support will roll over to when [Terry] makes more money."

Regarding Terry's stock, the court determined "[a]s part of his employment contract, [Terry] received 150,000 shares of Sciens Series A Preferred Stock. The Court considers this stock award as income and as such, allocates 10% of that stock to [Jane] as additional child support." The court ordered Terry to "hold that 10% of stock in trust for [Jane] until such time as the shares are exercisable. [¶] [Terry] shall inform [Jane] promptly when the stock becomes exercisable at which point [Jane] can tell [Terry] to sell the block of shares he is holding on her behalf. [¶] If [Terry] sells the rest of the shares, he can sell [Jane's] too, if she agrees. [¶] Any further awards of stock or cash to buy stock shall be treated similarly."

The court denied Terry's request for a seek work order, concluding such an order was appropriate only where Terry was "behind in his child support payments and he is current." The order was effective September 1, 2016 until "further order of the court or as set forth in the [divorce] judgment filed . . . in New Jersey."

C.

*Reconsideration Motion and June 2019 Amended Order*

Terry moved for reconsideration on several grounds. As relevant here, Terry argued the duration of child support set forth in the court's order contravened the parties' April 2013 stipulated order. Terry also claimed the number of stock shares in the order was incorrect because he received 250 shares of Sciens stock, not 150,000. Terry offered a supporting declaration explaining how much stock he owned.

In June 2019—before the hearing on the reconsideration motion—the court amended the March 2019 order "sua sponte." The amended order—now consistent with the 2013 stipulated order—directed Terry to pay child support until each child reached the age 19, or reached the age of 18 and was

6

no longer a full-time high school student, whichever occurs first.[4]  The court did not modify the March 2019 order in any other respect.  Shortly thereafter, Terry withdrew his reconsideration motion.

Both parties timely appealed.

DISCUSSION

"A trial court's determination to grant or deny on a request for modification of a child support order will be affirmed unless the trial court abuses its discretion, and it will be reversed only if prejudicial error is found from examining the record below.  [Citation.]  [¶]  Under this standard, we consider only 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.'  [Citation.]  'We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order.' "  (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527.)

However, the trial court's discretion is not boundless.  The " 'determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule.  [Citations.]' . . . [T]he trial court's discretion is not so broad that it 'may ignore or contravene the purposes of the law regarding . . . child support.' "  (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283, superseded by statute on other grounds as stated in *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1049.)

---

[4] As Terry acknowledges, child support terminated before the trial court issued the amended order.

# I.

## *Jane's Appeal*

Jane contends the court erred by departing from the child support guideline and setting monthly support at $0. According to Jane, the child support order "is contrary to established law" because spousal support received from a party to the child support proceeding is not a special circumstance justifying departure from the guideline. We agree.

To place the issues in context, we begin with some brief background on the statutory scheme governing child support orders. "Child support awards in California are governed by the legislation that established a statewide uniform child support guideline." (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 527 [citing §§ 4050–4076].) Courts must " 'calculate child support under the statutory guidelines. [Citation.] . . . "[T]he trial court may not depart from them except in the special circumstances enumerated in the statutes. [Citations.]" [Citation.] The guideline amount of child support, which is calculated by applying a mathematical formula to the parents' incomes, is presumptively correct.' " (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 640–641.)

The mathematical formula turns, in relevant part, on each party's disposable income. Disposable income, as a general matter, is calculated by subtracting certain statutorily approved deductions (§ 4059) from the party's statutorily defined gross income (§ 4058). (*In re Marriage of Hein, supra,* 52 Cal.App.5th at p. 528.)

"A deviation from the guideline amount may be appropriate where '[a]pplication of the formula would be unjust or inappropriate due to special circumstances in the particular case.' " (*In re Marriage of Sorge, supra,* 202 Cal.App.4th at p. 641 [quoting § 4057, subd. (b)(5)]; *In re Marriage of*

8

*Rodriguez* (2018) 23 Cal.App.5th 625, 636.) The statute enumerates several nonexclusive special circumstances. (§ 4057, subd. (b)(5)(A)–(D).) " 'The "special circumstances" exception of section 4057, subdivision (b)(5) gives the trial court "considerable discretion to approach unique cases on an ad hoc basis." ' [Citations.] A trial court has 'broad discretion' to determine when special circumstances apply." (*Rodriguez*, at p. 636.) But the exercise of discretion under section 4057, subdivision (b)(5) is not "open-ended. Courts have *no* discretion to make a 'special circumstances' adjustment in guideline support that is itself *forbidden* by the statute." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2020) ¶ 6:151.1.)

*In re Marriage of Corman* (1997) 59 Cal.App.4th 1492 (*Corman*) is directly on point. There, the court conducted a lengthy statutory analysis and concluded spousal support paid by one party to another may not be included in the recipient's gross income. (*Id.* at p. 1500.) *Corman* further held that because the statutory scheme does not permit the consideration of that spousal support in the determination of disposable income, a court cannot consider such support as a special circumstance justifying departure from support guidelines. (*Id.* at pp. 1495, 1501–1502.) The *Corman* court also noted that including such support as income to the recipient would, in that case, result in a de facto modification of the nonmodifiable spousal support order for which the parties had bargained. (*Id.* at p. 1501.)

As in *Corman*, the court determined guideline support was unwarranted because Terry would have little disposable income after paying spousal support and child support to Jane. In effect, the court concluded Jane's receipt of nonmodifiable spousal support from Terry was a special circumstance warranting a departure from the statutory guideline. This was improper. Under *Corman*, a court may not consider spousal support received

9

from a party to the child support proceedings as a special circumstance justifying departure from the guideline under section 4057. (*Corman, supra,* 59 Cal.App.4th at p. 1495.) Terry incorrectly argues that this holding in *Corman* is dictum.

However well-intentioned, the trial court's decision to depart from the statutory guideline based on Jane's receipt of spousal support payments was erroneous. (*In re Marriage of Butler & Gill* (1997) 53 Cal.App.4th 462, 465 ["the only discretion a trial court possesses" in fixing child support "is the discretion provided by statute or rule"]; *In re Marriage of Wood* (1995) 37 Cal.App.4th 1059, 1069 [reversing child support order where court made adjustment to guideline support "specifically forbidden" by the Legislature], disapproved on other grounds in *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 187.)

We reverse the child support order and remand for the court to reconsider the issue of child support payable by Terry to Jane without consideration of the nonmodifiable spousal support. (*Corman, supra,* 59 Cal.App.4th at p. 1502.)

## II.

### *Terry's Appeal*

#### A.     Stock Award

Terry challenges, on several grounds, the portion of the child support order awarding a percentage of his stock to Jane. Terry begins by arguing the court's order is erroneous to the extent it indicates he possessed 150,000 shares of stock. Essentially, he contends the court misinterpreted his comments at the hearing, and that he meant he had received $150,000 *worth* of shares. To support this argument, Terry has moved under Code of Civil Procedure section 909 for this court to consider additional evidence as to the

amount of stock he received. We deny the motion as unnecessary. The essential portion of the court's order was the percentage of stock awarded to Jane, not its overall quantity or value. Moreover, any error in the amount of shares is easily correctible by the trial court on remand.

Next, Terry contends the stock was not income because "it was not an element of his compensation." We disagree. There was no dispute in the trial court that the stock was part of Terry's compensation package.[5] He was required to purchase stock in the company with a portion ($150,000) of the money he received as compensation. In the trial court and on appeal, Terry contends the stock—though it was purchased with cash—had no present value because it could not be sold until some future date.[6] There is no suggestion here that Terry intentionally received a portion of his compensation with limited present value but potentially greater future value in order to shelter that income from a child support award calculation. Nonetheless, intentional or not, if the portion in question is an asset representing available income to the parent, it is properly included in a child support award. (See *In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1363.)

Here, the money converted into actual stock with no current value is the functional equivalent of the stock options considered in *In re Marriage of Macilwaine, supra,* 26 Cal.App.5th 514, or the deferred salary in *In re Marriage of Berger* (2009) 170 Cal.App.4th 1070. "Once restrictions on exercise and sale are removed, [husband's] stock options are not materially

---

[5] Additionally, his briefing on the motion for additional evidence and its attachments concede that the stock was, to a large extent, compensation, as did his own declaration in support of the motion for reconsideration.

[6] The exact nature of this future event was not clear, but the trial court accepted this assertion and considered it as part of its order.

distinguishable from the salary voluntarily deferred (and reinvested in the employer) in *Berger*; a vested, mature stock option makes objectively measurable compensation immediately available to [husband]. In deciding to hold the options, rather than exercise and sell them, [husband] invests this compensation in the employer, in hopes of increased future returns. While [husband] is free to make whatever investment choices he desires, his choices do not alter the fact that, once an option is vested and mature, his employer has made actual compensation available to him." (*Macilwaine,* at p. 532, fn. omitted.)

Those are essentially the circumstances before us. Terry was required to reinvest a portion of his salary in the company. Restrictions on this investment rendered it of no present value, but of some potential future value, which the trial court appropriately recognized: "The Court considers this stock award as income and as such, allocates 10% of that stock to [Jane] as additional child support. [¶] [Terry] shall hold that 10% of stock in trust for [Jane] until such time as the shares are exercisable." Here, the court considered the unique circumstances regarding Terry's income and exercised its broad discretion to make a child support order using a percentage of the stock when it could be sold and a financial gain realized. This was not an abuse of discretion. (See *In re Marriage of Berger, supra,* 170 Cal.App.4th at p. 1084 [in assessing earning capacity, a trial court may take into account earnings from invested assets]; *In re Marriage of Ostler & Smith, supra,* 223 Cal.App.3d at pp. 37, 51–52 [affirming use of a percentage of obligor parent's future bonuses when calculating child support].)

Relying on *In re Marriage of Kerr* (1999) 77 Cal.App.4th 87 (*Kerr*), Terry contends the court erred in the award of stock by not setting "a cap such that the amount would not exceed the children's reasonable needs." In

*Kerr*, the child support award was comprised of a percentage of the husband's postdissolution stock option income from his employer. (*Id.* at pp. 90, 92, 97.) In a three-year period, and while the children were still minors, the stock options increased in value twentyfold, and the husband objected that the stock option percentage thus exceeded the children's needs. (*Id.* at pp. 90, fn. 1, 92.)

The appellate court agreed. It concluded the extraordinary increase in value was a "unique circumstance[]" which rendered the use of a percentage without regard to the needs of the minor children erroneous. (*Kerr, supra,* 77 Cal.App.4th at pp. 90, 97.) *Kerr* is distinguishable. When the court issued the child support order, Terry's stock had not drastically increased value like the stock in *Kerr*. Moreover, in the trial court, Terry never objected to the use of the 10 percent figure or suggested the child support award exceeded the children's needs. On appeal, Terry does not contend the percentage figure is inappropriate. Instead, he concedes that "[a]n order awarding Jane 10% of any monies [he] netted from the sale of his stock during the [children's] minority would have been appropriate."

Terry claims the court erred to the extent the stock awarded might not be sold until after the children reach majority. However, whether the custodial parent realizes the income during the children's minority is of no moment. The support order is meant to compensate the custodial parent for the cost of the children's care. (See *In re Marriage of Lackey* (1983) 143 Cal.App.3d 698, 706.) There is no reason Jane cannot recoup some of these expenses after the children reach majority. Additionally, the children are entitled to share in the supporting spouse's greater, post-dissolution standard of living, to the extent reasonably necessary to meet their needs. (*Kerr, supra,* 77 Cal.App.4th at pp. 95–96.) To accept Terry's argument

13

would encourage parents to defer the realization of income until after the children reach majority.

The children have, of course, aged out. On remand, the court can easily determine what stock was purchased as part of Terry's compensation during each child's minority and fix that figure based upon the 10 percent award.[7] We disagree with Terry's speculation that the court's award can be read to include any stock he has ever purchased in the company. The award plainly pertains to stock received as income, i.e., as part of compensation.

B.    The Monthly "Advance"

Terry also challenges the portion of the child support order awarding Jane $2,000 per month as "an advance against the additional child support owed by [Terry] from anticipated bonuses and additional income received at his new job. If there is no bonus or additional income, then the amounts advanced as child support will roll over to when [Terry] makes more money."

The children have reached the age of majority, and Terry's obligation to pay the advance has ended. If he did not pay the advance during the intervening years, he has nothing to complain of now. If he did pay the advance, he would be entitled to a credit against any support owing. On

---

[7] For the first time on appeal, Terry complains the stock award does not step down to account for the older child reaching majority. This issue is easily rectified on remand. Terry's other challenges to the stock award are not persuasive. His claim that, as separate property, the stock is not subject to a child support order, is wrong. A trial court may award separate property as child support. (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 812.) Lastly, by allocating some of Terry's stock to Jane, the court did not make an unauthorized "add-on[]" to child support. Sections 4061 or 4062, which come into play when the court awards child support "*beyond* the guideline amount" (*In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 467, italics added), do not apply here because the child support order did not exceed the guideline.

14

remand, the trial court can determine the amount of advances paid and give Terry a credit for that amount.

C.    Seek Work Order

Terry's final claim is that the court erred by denying his request to order Jane to seek employment. We disagree. Terry asked the court to order Jane to seek work. He did not follow the court's lead and obtain a vocational evaluation of Jane. To the extent Terry argued below that income should be imputed to Jane, he failed to present evidence on that point.

DISPOSITION

The June 2019 order modifying child support is reversed. On remand, the court must recalculate the amount of child support payable from Terry to Jane from September 1, 2016 until each child reached the age of majority. The court should also apply any credit earned by Terry from the payment of an "advance" and may modify the portion of the order pertaining to the award of stock as would be consistent with this opinion. In the interests of justice, the parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

15

_____
                      Reardon, J.*

WE CONCUR:


_____
Simons, Acting P. J.


_____
Burns, J.


A157626

---

     * Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16